The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES, Malcolm Baldrige, Secretary of Commerce, Lionel H. Olmer, Undersecretary for International Trade Administration, United States Department of Commerce, Larry Brady, Assistant Secretary for International Trade Administration, United States Department of Commerce, Gary N. Horlick, Deputy Assistant Secretary for Import Administration, United States Department of Commerce, Leonard M. Shambon, Director, Office of Compliance, International Trade Administration, United States Department of Commerce, John Kugelman, Director, Antidumping Order Compliance Division, International Trade Administration, United States Department of Commerce, J. Linnea Bucher, Compliance Officer, Antidumping Order Compliance Division, International Trade Administration, United States Department of Commerce, Defendants,

and

NTN Bearing Corporation of America, Intervenor.

Court No. 82–6–00890.

United States Court of International Trade.

Dec. 22, 1982.

Eugene L. Stewart, Terence P. Stewart and Robert E. Ruggeri, Washington, D.C., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Director, Commercial Litigation Branch, New York City (Velta A. Melnbrencis, New York City, on the briefs), for defendants.

Barnes, Richardson & Colburn, Chicago, Ill. (James H. Lundquist, Robert E. Burke and Edmund Maciorowski, Chicago, Ill., on the briefs), for intervenor NTN Bearing Corp. of America.

*Opinion and Order*

MALETZ, Judge:

■ This matter is before the court on plaintiff's motion for a preliminary injunction.[1] On June 25, 1982 plaintiff The Timken Company (Timken) filed the present action challenging an administrative review conducted by the International Trade Administration of the Department of Commerce (ITA) pursuant to section 751 of the Trade Agreements Act of 1979, 19 U.S.C. § 1675 (Supp. IV 1980). As a result of that review an earlier antidumping duty order issued on August 18, 1976 was revoked. *See* 47 Fed.Reg. 25757 (1982).

The gravamen of Timken's complaint is that in conducting its section 751 review the ITA failed to consider certain information submitted by Timken during the administrative review process. In addition, Timken complains that the ITA failed to make certain adjustments to the price of the imported merchandise.

Besides seeking an order from this court finding that the ITA's section 751 review is

---

1. In addition to its motion for a preliminary injunction plaintiff has filed a motion in limine to have certain affidavits held inadmissible and a motion to exclude an affidavit. Generally, a court may in the exercise of its sound discretion grant or deny a preliminary injunction on the basis of affidavits. *Ross-Whitney Corp. v. Smith Kline & French Laboratories,* 207 F.2d 190, 198 (9th Cir.1953); 7 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 65.-04[3] (2d ed. 1982). This is true, for example, where there are no controverted facts, *SEC v.*

*Frank,* 388 F.2d 486 (2d Cir.1968); or in instances of extreme urgency, *Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Co.,* 443 F.2d 867 (2d Cir.1971).

In the present case, however, there are many disputed factual issues. More importantly, intervenor had nearly three months within which to prepare the testimony of its affiants for presentation at the hearing on the preliminary injunction. Accordingly, plaintiff's two motions are granted.

unsupported by substantial evidence, Timken requests injunctive relief *pendente lite* enjoining the liquidation of entries of the subject merchandise—tapered roller bearings—manufactured by NTN Toyo Bearing Co., Ltd. (NTN) and imported by intervenor NTN Bearing Corporation of America (NBCA) since April 1, 1978. A temporary restraining order was granted on June 25, 1982, and Timken has now moved for a preliminary injunction.

For the reasons that follow, the court concludes that Timken has failed to demonstrate the requisite harm necessary for issuance of an injunction. Its motion is, accordingly, denied.

In order to prevail on a motion for a preliminary injunction the petitioner must show (1) that there is a substantial likelihood of success on the merits; (2) that without the relief requested the petitioner will be irreparably injured; (3) that the issuance of the relief requested will not substantially harm other interested parties; and (4) that the public interest would be served by the relief requested. *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958). *See also S.J. Stile Associates, Ltd. v. Snyder*, 646 F.2d 522 (CCPA 1981); *Washington Metropolitan Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977).

■ In view of the stay pending appeal which was issued by this court in *Brother Industries Ltd. v. United States,* —— CIT ——, Slip Op. 82–50 (June 28, 1982), and given the identity of issues presented in that case and the present one, considerations of comity lead the court to conclude that Timken has satisfied the first of the four *Virginia Petroleum* criteria, i.e., likelihood of success on the merits.[2] However, turning to the second of those criteria—a showing of irreparable injury in the absence of injunctive relief—Timken has failed to make the requisite showing.

At the September 22, 1982 hearing on Timken's motion John Fellows, vice president of marketing for Timken, testified as to the injury being incurred by Timken. While Mr. Fellows addressed at length the question of injury allegedly caused by imported roller bearings, his testimony was in large part conclusory, speculative and based on hearsay.

The crux of the Fellows' testimony was that Timken had lost business to NTN. His testimony was based on (1) internal reports and market research data prepared by his subordinates and (2) discussions he had had with Timken customers who told him that they were now purchasing NTN roller bearings because of their comparatively lower price. The declarants of these hearsay statements never testified, nor were the reports ever produced or offered at the hearing.[3]

At the hearing Mr. Fellows testified at length about his responsibilities as vice president of marketing, focusing primarily on how he kept himself informed on the state of competition in the U.S. roller bearing market. He explained that his general managers and group managers informed him monthly about Timken's competition, and how Timken's market research group, which Mr. Fellows supervises, compiled and analyzed this information. He further testified that as part of his duties he kept abreast of the competitive market situation through direct telephonic contact with Timken's customers.

Three direct customer contacts were discussed by Mr. Fellows at the hearing. One contact was allegedly made with Ford Motor Co. as recently as one month prior to the hearing. Regarding the Ford account Mr. Fellows testified that Timken had lost more than one million dollars in sales as a consequence of lower priced NTN roller bearings. The witness further testified that he had determined that Timken's loss of sales to

---

2. The criteria employed in issuing a stay pending appeal are substantially identical to those used in issuing a preliminary injunction. *See, e.g., Reserve Mining Co. v. United States*, 498 F.2d 1073 (8th Cir.1974).

3. Timely objection was made to Mr. Fellows' testimony on the basis of hearsay and lack of a proper foundation. *See* Fed.R.Evid. 802, 612.

NTN was attributable to the latter's lower prices based on direct statements to that effect by Ford Motor executives and purchasing managers. As to two other Timken customers, General Motors and Caterpillar Tractor Co., Mr. Fellows' testimony was essentially the same: as explained to him by representatives of both General Motors and Caterpillar, Timken had lost sales to NTN solely because of NTN's comparatively lower prices.

In response to a hearsay objection to this portion of Mr. Fellows' testimony, Timken's offer of proof was that the witness was merely explaining what he did in performing his duties with Timken. On the basis of this offer of proof the objection was overruled. Now, however, in its post-hearing memoranda Timken attempts to use that testimony to prove irreparable harm to it. Thus, taking Mr. Fellows' testimony concerning telephone conversations with Timken customers who allegedly told Mr. Fellows that they were buying NTN roller bearings because of their lower price, Timken attempts to offer those hearsay statements to prove the truth of the matter asserted by those customers. Given its hearsay character, however, that testimony could only be allowed for the limited purpose of explaining what the witness did in his job with Timken and not for the expanded purpose of proving the truth of the matters contained therein.

■ In addition to this hearsay testimony, Timken price lists were introduced which show that during 1979, 1980 and 1981 Timken increased its prices for roller bearings. Although it is disputed to what extent, if any, these price increases outpaced the producer price index, the undisputed fact remains that Timken did raise its roller bearing prices during a period in which it claims it is suffering continuing injury at the hands of NTN. These price increases have unquestionably contributed to any price differentials which may exist between NTN roller bearings and comparable Timken products, thereby seriously straining any causal link between irreparable harm to Timken and the business conduct of NTN.

Thus, other than his own conclusory statements to that effect, the testimony of Mr. Fellows—the keystone of Timken's proof of injury—failed to establish alleged pricing differentials or loss of sales attributable to NTN.

When questioned on cross-examination about the economic impact of the 1979 liquidation of a number of NTN roller bearing entries, Mr. Fellows testified that he believed that injury had resulted because it gave NTN "more confidence" to continue to price at an unfairly lower price. Mr. Fellows did not furnish any support for this speculation, however.

Finally, although Timken asserts that it has suffered an 18 percent decline in sales and a 50 percent drop in profits during the first six months of 1982, it is conceded that a substantial number of Timken's customers are domestic automakers who themselves, for a period of years, have been faced with a depressed domestic market. This factor necessarily has had a direct economic impact on the volume of Timken's roller bearing sales in the United States.

In summary, nowhere in the record has Timken established by sufficiently probative evidence that its declines in sales and profits are causally related to NTN business activities in the United States roller bearing market. Additionally, minimal and insufficient proof has been presented that loss of business or other irreparable harm will result if the liquidation of NTN's roller bearing entries is not enjoined. *Compare S.J. Stile Associates,* 646 F.2d at 525 n. 6 (affidavit describing customer's telephone conversation and to which two customers' letters were attached insufficient to prove irreparable harm where authors of letters did not testify).

■ Denial of injunctive relief is proper where there is no clear showing of irreparable injury. *Berrigan v. Norton,* 451 F.2d 790, 793 (2d Cir.1971). As the Court of Customs and Patent Appeals (a predecessor of the Court of Appeals for the Federal Circuit) instructed in *S.J. Stile Associates:*

Only a viable threat of serious harm which cannot be undone authorizes exercise of the court's equitable power to enjoin before the merits are fully determined.... A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.

*Id.* at 525 (citations omitted). In view of the speculative nature of the proof presented in this case, the court must conclude that Timken has not made a showing of imminent irreparable harm sufficient to warrant the issuance of a preliminary injunction.

In the last analysis, to grant a preliminary injunction in circumstances such as those presented here would effectively result in the routine, if not automatic granting of injunctions in every case where entries of merchandise subject to section 751 review are about to be liquidated. As has been repeatedly stressed by the courts, a preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." *Medical Society of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977). *See also Zenith Radio Corporation v. United States,* —— C.I.T. ——, 553 F.Supp. 1052 (1982). Moreover, in empowering this court to issue injunctions restraining liquidation of entries while litigation is pending, the Senate Finance Committee emphasized that

> the issuance of injunctive relief is truly an extraordinary measure and that the relief should not be granted in the ordinary course of events.

S.Rep. No. 249, 96th Cong., 1st Sess. 253 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 639.

Accordingly, for all the foregoing reasons, Timken's motion for a preliminary injunction is denied.