**BOMONT INDUSTRIES, Plaintiff,**

**v.**

**UNITED STATES, Defendant,**

**and**

**Asahi Chemical Industry Co., Ltd., Intervenor-Defendant.**

**Court No. 86–05–00557.**

United States Court of International Trade.

June 17, 1986.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart and Mary Tuck Staley, Washington, D.C., for the plaintiff.

Richard K. Willard, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Sheila N. Ziff, Washington, D.C., for the defendant.

Barnes, Richardson & Colburn, James S. O'Kelly and Gerard P. Burke, Jr., New York City, for the intervenor-defendant.

AQUILINO, Judge:

Two producers of impression fabric from man-made fiber in Japan, namely, Asahi Chemical Industry Co., Ltd. and Shirasaki Tape Co., Ltd., were excepted from an affirmative dumping determination in 1978. *See* 43 Fed.Reg. 22,344 (May 25, 1978). The plaintiff domestic producer of nylon impression fabric and another company eventually filed a dumping petition with the Department of Commerce limited to sales from Asahi and Shirasaki. Thereafter, the International Trade Administration ("ITA") issued a final determination that "nylon impression fabric from Japan is not being, nor is likely to be, sold in the United States at less than fair value, as provided in section 731 of the Tariff Act of 1930, as amended". 51 Fed.Reg. 15,816 (April 28, 1986).

This action seeks judicial review of that determination pursuant to subsections (A)(i)(I) and (B)(ii) of 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 1581(c).

Plaintiff's application for a temporary restraining order was denied after all parties were heard in open court. Thereafter, a hearing was held on plaintiff's application for a preliminary injunction. The proposed order submitted in conjunction with that application would enjoin liquidation of any nylon impression fabric produced by Asahi and Shirasaki and entered during the period April 28, 1986 through final resolution of this action by the court.

## I

At both hearings, counsel for the defendant argued that any suspension of liquidation of entries during the pendency of this action would be "meaningless".[1] This position is articulated further in defendant's memorandum of law as follows:

> The suggestion that a favorable outcome for plaintiff in this action could possibly affect entries covered by a preliminary injunction suspending liquidation and could result in the retroactive assessment of antidumping duties on those entries betrays plaintiff's misunderstanding of the antidumping law. It is patent from the statutory scheme that the merchandise covered by the involved entries *will* enter the commerce of this country free of antidumping duties and beyond the reach of this Court, regardless of the outcome of this action or the issuance of a preliminary injunction. The reach of the antidumping law is *prospective only, not* retroactive, except in the limited situations where *provisional* measures (suspension of liquidation and imposition of provisional antidumping duties or a security deposit equal to the amount of the provisionally estimated antidumping duties) are allowed. Under the statutory scheme, these provisional measures may be imposed only after the publication of a preliminary affirmative determination by Commerce in an antidumping or countervailing duty proceeding.[2]

> \* \* \* \* \* \*

> ... [E]njoining liquidation of the involved entries upon plaintiff's application would be a futile exercise as those entries are beyond the reach of this antidumping litigation and of this Court and must ultimately be liquidated free of antidumping duties. Under these circumstances, issuance of a preliminary injunction would be contrary to the statutory

---

**1.** Transcript of proceedings on May 9, 1986 [hereinafter cited as "May 9 Tr."], p. 3; transcript of proceedings on May 23, 1986 [hereinafter cited as "May 23 Tr."], pp. 11, 12.

**2.** Defendant's Memorandum in Opposition to Plaintiff's Application for Preliminary Injunction, p. 2 (emphasis in original).

scheme, the legislative intent, and an abuse of discretion.[3]

This position, which concentrates on the roles and responsibilities of the ITA and International Trade Commission ("ITC") for the imposition of antidumping duties under Subtitle B of Title I of the Trade Agreements Act of 1979, 93 Stat. 162–75, is clearly erroneous. Title X of that same statute provides for judicial review of the exercise of those roles and responsibilities. Section 1001(c)(2) thereof, now 19 U.S.C. § 1516a(c)(2), as amended, states that this Court of International Trade

> may enjoin the liquidation of some or all entries of merchandise covered by a determination of the ... administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.[4]

Unless such liquidation is enjoined, subsection (c)(1) mandates that all entries be liquidated in accordance with the administrative determination. On the other hand, 19 U.S.C. § 1516a(e) provides:

> Liquidation in accordance with final decision—If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—
>
> (1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and
>
> (2) *entries, the liquidation of which was enjoined under subsection (c)(2) of this section,*
> *shall be liquidated in accordance with the final court decision in the action.* Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision. [emphasis added]

The Court of Appeals for the Federal Circuit reaffirmed this clear-cut statutory rule in *Melamine Chemicals, Inc. v. United States,* 732 F.2d 924, 934 (Fed.Cir.1984).[5] *See also Smith-Corona Group, Consumer Products Division, SCM Corporation v. United States,* 1 CIT 89, 96–99, 507 F.Supp. 1015, 1021–23 (1980).

## II

■ The Report of the Committee on Ways and Means of the House of Repre-

---

**3.** *Id.* at 10. *See also* Intervenor's Memorandum of Law in Opposition to Plaintiff's Application for a Preliminary Injunction, p. 4 ("no purpose would be served by suspending the liquidation of entries") and pp. 6–7 ("[t]he equitable relief sought by plaintiff can have no legal effect on current or future entries of Asahi's merchandise").

**4.** Intervenor-defendant's contention at page 5 of its memorandum that "determination" means only an "affirmative" one is also clearly erroneous. Subsection (c)(2) is predicated upon "a determination described in paragraph (2) of subsection (a)". One such determination is a "final *negative* determination by the administering authority ... under section ... § 1673d". 19 U.S.C. § 1516a(a)(2)(B)(ii) (emphasis added).

**5.** Intervenor-defendant's memorandum of law cites (at page 11) this decision for another, appropriate proposition. Despite references to that case in the complaint itself (para. 46) and in plaintiff's reply brief (at pages 17–18), again for other reasons, intervenor-defendant's cita-

tion has been taken as an excuse by plaintiff's counsel to present a "Motion for Leave to File a Supplemental Statement to Plaintiff's Reply Brief". This motion is hereby denied, and no part of that statement is either referred to or relied on hereinafter.

The court received on June 16, 1986 a memorandum from defendant's counsel attempting to discuss *Melamine* for the first time. The absence of any prior reference to this case or the underlying statute, even after this court's mention thereof during colloquy on the application for a temporary restraining order [*see* May 9 Tr. at 7], constrains the court to now question whether defendant's counsel have intentionally disregarded the dictates of CIT Rule 11 as well as Canon 7 of the Lawyer's Code of Professional Responsibility in general and Ethical Consideration 7–23 and Disciplinary Rule 7–102(A)(2) and (5) in particular. Any such disregard will not be countenanced by this court in this or any other action brought before it.

sentatives recognized that subsection (c)(2) made a "major change" in the law. H.R. Rep. 317, 96th Cong., 1st Sess. 182 (1979). But that report also stated that the change is not to be construed as granting the court authority to exercise the power in all situations, only "where appropriate". *Id.* Indeed, subsection (c)(2) codified the traditional judicial criteria for ruling on an application for a preliminary injunction as follows:

> ... In ruling on a request for ... injunctive relief, the court shall consider, among other factors, whether—
>
> (A) the party filing the action is likely to prevail on the merits,
>
> (B) the party filing the action would be irreparably harmed if liquidation of some or all of the entries is not enjoined,
>
> (C) the public interest would best be served if liquidation is enjoined, and
>
> (D) the harm to the party filing the action would be greater if liquidation of some or all of the entries is not enjoined than the harm to other persons if liquidation of some or all of the entries is enjoined.[6]

In other words, while Congress clearly understood that, in the absence of a preliminary injunction of the kind sought herein, entries "will escape assessment of dumping duties"[7], it was unwilling to change the law other than where "extraordinary circumstances"[8] exist which still require analysis of the foregoing criteria for injunctive relief.

Whether the analysis follows the order of those criteria as set forth in the statute, or as articulated in the Federal Circuit or formulated in other jurisdictions[9], a crucial requirement is irreparable harm to the applicant. In *Zenith Radio Corporation v. United States*, 710 F.2d 806, 810 (Fed.Cir. 1983), the court concluded

> that liquidation would ... eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79–'80 review period. The result of liquidating the '79–'80 entries would not be economic only. In this case, Zenith's statutory right to obtain judicial review of the determination would be without meaning for the only entries permanently affected by that determination. In the context of Congressional intent in passing the Trade Agreements Act of 1979 and the existing finding of injury to the industry underlying T.D. 71–76, we conclude that the consequences of liquidation do constitute irreparable injury.

As indicated, that case arose out of a review of a fixed period pursuant to section 751 of the 1979 act, 19 U.S.C. § 1675.

---

**6.** 19 U.S.C. § 1516a(c)(2) (1979) (sentence deleted by Customs Courts Act of 1980, Pub.L. 96–417, § 608(c), 94 Stat. 1746).

**7.** H.R.Rep. 317, 96th Cong., 1st Sess. 182 (1979).

**8.** S.Rep. 249, 96th Cong., 1st Sess. 248 (1979), U.S.Code Cong. & Admin.News 1979, p. 381.

**9.** *Compare S.J. Stile Associates Ltd. v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981) *with* (1) *Ceramica Regiomontana, S.A. v. United States*, 7 CIT 390, 590 F.Supp. 1260 (1984):

> ... Although the extraordinary remedy of a preliminary injunction is not available unless the moving party's burden of persuasion is met as to all four factors, the showing of likelihood of success on the merits is in inverse proportion to the severity of the injury the moving party will sustain without injunctive relief, *i.e.,* the greater the hardship the lesser the showing.

7 CIT at 395, 590 F.Supp. at 1264 (quoting from *American Air Parcel Forwarding Company v. United States*, 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981)); *and* (2) *Texaco Inc. v. Pennzoil Company*, 784 F.2d 1133, 1152 (2d Cir.1986):

> In this circuit the standard for issuance of preliminary injunctive relief is well-settled. The plaintiff has the burden of showing irreparable harm *and* (1) either probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *plus* a balance of hardships tipping decidedly in the plaintiff's favor.... The effect of the grant or withholding of such relief upon the public interest must also be considered. [emphasis in original; citations omitted]

In an action such as the one at bar, liquidation of past entries at the proper rate of duty is not the "only remedy available". Rather, this proceeding can affect future entries. Thus, the court in *American Spring Wire Corp. v. United States*, 7 CIT 2, 578 F.Supp. 1405 (1984), concluded that the *Zenith* decision did not create an irrebutable presumption of irreparable harm. That is, an applicant for an injunction suspending liquidations during judicial review of a negative administrative dumping determination must prove irreparable injury along with the other requirements for such extraordinary relief. *See, e.g., Timken Company v. United States*, 6 CIT 75, 79, 569 F.Supp. 65, 69 (1983).[10]

At the hearings herein, plaintiff's attorneys, who were also counsel of record in both *American Spring Wire* and *Timken,* attempted to persuade the court that failure to suspend liquidation of Asahi and Shirasaki entries during the term of this action will cause their client irreparable harm. Despite an able presentation, they failed to bear their burden in this regard.

The evidence indicates that the plaintiff is having difficulty competing in the marketplace. It sustained a net loss in 1984, then achieved an operating profit for 1985; for the first four months of this year, the company experienced a drop in sales and a net loss.[11] At the May 23 hearing, the testimony focused on one particular customer of the plaintiff[12] which apparently has purchased competing merchandise from Shirasaki, but that testimony also indicated sales to the customer from domestic competitors. *See* May 23 Tr. at 55. In any event, the plaintiff was able to negotiate a substantial sale to that customer in March 1986, albeit at a price lower than a quotation for the same product at the end of 1985. *See* Hearing Exhibit 2.

In July 1985, the ITC reached a preliminary determination pursuant to 19 U.S.C. § 1673b(a) that there was a reasonable indication that the domestic industry is materially injured, or is threatened with material injury, by reason of imports from Japan of nylon impression fabric alleged to be sold at less than fair value. USITC Publication 1726 at 1 (July 1985). The determination is stated to have been based on findings, among others, of significant growth in demand for such fabric and of underselling by imports in a very price sensitive market. *See id.* at 3. The Commission concluded its report on the following note, however:

> There was a significant increase in the capacity of the domestic industry during the period of investigation. The entry of Milliken into the market as a fully integrated producer may accentuate this trend. This may have an impact on the analysis of the causal link between Japanese imports and the condition of the domestic industry.[13]

Of course, the question posed by the instant application is not whether the plaintiff is being injured by Asahi and Shirasaki imports, or whether those imports are being sold at less than fair value, but rather, to quote from the affidavit of plaintiff's president, whether

> admission of Japanese fabric into commerce in the United States without the possibility of offsetting dumping duties will prevent Bomont from recovering profitability, prolong its period of losses, deprive it of working capital, and threaten its very existence.[14]

---

10. That case also involved an annual review pursuant to section 751 of the 1979 act, but the complaint challenged the resultant administrative revocation of the antidumping duty order in contrast to *Zenith,* where the issue simply was the appropriate margin for such duty. *See Timken Company v. United States,* 4 CIT 263, 264, 553 F.Supp. 1060, 1061 (1982).

11. *See* Affidavit of Joseph A. Sullivan, para. 6, p. 4 (May 5, 1986) and Hearing Exhibit 1.

12. The Sullivan affidavit outlines (in paragraph 8) recent sales experiences with some six other "major accounts".

13. USITC Publication 1726 at 10, n. 37 (July 1985). The court notes in passing that the other domestic petitioner before the ITA has not joined in this action for judicial review.

14. Sullivan Affidavit, para. 7.

If this is the gravamen of plaintiff's application, it prays for too much. And plaintiff's proof shows too little. That is, the evidence fails to support the thesis that lack of suspension of liquidation during the pendency of this action, in the hope of ultimate administrative imposition of an antidumping duty, will cause the plaintiff irreparable injury. While the court recognizes that Asahi and Shirasaki merchandise may enter the United States during this period, there has been no attempt by the plaintiff to quantify the number of such entries which have occurred (or which will occur).

The plaintiff did attempt to compare its prices with those of the Japanese competitors, but the best evidence of the latter, a Shirasaki price list, is apparently two years out of date.[15] As for Asahi, the testimony at the May 23 hearing did not show sales to the one customer singled out for analysis. *See, e.g.*, May 23 Tr. at 56. Moreover, an affidavit of plaintiff's vice president for sales submitted originally to the ITA admits that he had no "specific price quote information on Asahi unslit fabric during the second half of 1985 or through the early part of 1986". Exhibit 9, para. 9 to Complaint.

That same affidavit specifies a Shirasaki price for the last quarter of 1985 *below* the price at which the plaintiff successfully negotiated the March 1986 sale referred to above. *Compare id.*, paras. 6–8 *with* Hearing Exhibit 2. On the other hand, another affidavit originally submitted to the ITA (and now Exhibit 10 to the complaint) describes in paragraph 4 a reduction in price in an attempt to compete with Shirasaki on another account. While this court does not yet have the administrative record before it, the magnitude of that reduction may well exceed the repair any appropriate antidumping duty could effectuate.[16]

As *Ceramica Regiomontana* and other cases show, *supra* page 1337, note 9, there is an inter-relationship between the requisite showings of likelihood of success on the merits and irreparable harm for preliminary injunctive relief. Paragraph 28(b) of the complaint herein alleges that the petition to the ITA claimed dumping margins of 19.7 percent or less for the period investigated, but that allegation concedes price increases to the United States of 18.1 percent for the same time frame.[17] While these figures have been juxtaposed in support of the first count of the complaint claiming an unlawful failure by the ITA to investigate initially a period of time longer than the first six months of 1985, they barely support any claim of irreparable injury.

Time, of course, is an element of irreparability. Indeed, the plaintiff has also presented the court with a motion for expedition of this action. However, the Customs Courts Act of 1980, 28 U.S.C. § 2647, provided that actions such as this shall have precedence. While this statutory provision was repealed by Congress in Public Law 98–620, effective November 8, 1984, pursuant to 28 U.S.C. § 1657 this Court of International Trade continues to grant such actions precedence. Furthermore, both 28 U.S.C. § 2635(b)(1) and CIT Rule 71(a) mandate that the defendant file the administrative record within forty days. When these requirements are compared with the year's time the Customs Service has at a minimum under 19 U.S.C. § 1504 to liquidate entries, any irreparable harm to the plaintiff due to lack of suspension of liquidation becomes even less discernible.

---

**15.** This document [Hearing Exhibit 7] was not offered for the contents thereof in any event, but only to indicate the type of information available to the witness in testifying within the meaning of Federal Rule of Evidence 701.

**16.** The court notes that the ITA in its original determination (in 1977) found weighted-average margins of 0.15 percent for Asahi and 0.34 percent for Shirasaki, with the margins for the latter ranging from 0.3 to 4.3 percent. Asahi's weighted-average margin was considered to be *de minimis*, that of Shirasaki "minimal". 42 Fed.Reg. 65,345 (Dec. 30, 1977).

**17.** *See also* Plaintiff's Memorandum of Points and Authorities in Support of its Application for a Temporary Restraining Order and a Preliminary Injunction, p. 15.

Failure of an applicant to bear its burden of persuasion on irreparable harm is ground to deny a preliminary injunction, and the court need not conclusively determine the other criteria. *See, e.g., National Corn Growers Association v. Baker,* 9 CIT 571, 585, 623 F.Supp. 1262, 1275 (1985); *American Air Parcel Forwarding Company v. United States,* 6 CIT 146, 152, 573 F.Supp. 117, 122 (1983). However, in view of the interrelationship of this criterion with the merits, the court is not persuaded now that the plaintiff is so likely to succeed on the merits as to make the showing of irreparable harm a conceptual formality.

In view of the foregoing, plaintiff's application for a preliminary injunction must be denied.

So ordered.