**IPSCO, INC. and Ipsco Steel, Inc., Plaintiffs,**

**and**

**The Algoma Steel Corp., Ltd. and Sonco Steel Tube Div. Ferrum, Inc., Plaintiff–Intervenors,**

**v.**

**The UNITED STATES, Defendant,**

**and**

**Lone Star Steel Company, Defendant–Intervenor.**

Court No. 86–06–00753.

United States Court of International Trade.

July 21, 1988.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr., New York City, and Matthew J. Clark, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (Platte B. Moring, III), Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

RESTANI, Judge:

Plaintiffs move for a preliminary injunction staying liquidation in this antidumping matter, so that this court's final decision resolving the challenge to the administrative determination will have full effect.[1] *See* 19 U.S.C. § 1516a(c)(2) and (e) (1982). As to the motion for preliminary injunction, there is little factual difference between *Oki Electric Indus. Co. v. United States*, 11 CIT ——, 669 F.Supp. 480 (1987) and the case at hand. Defendant urges that the court ignore *Oki*, alleging that it is incorrect, and that the court follow earlier cases such as *Fundicao Tupy S.A. v. United States*, 11 CIT ——, 669 F.Supp. 437 (1987), *appeal dismissed as moot*, 841 F.2d 1101 (Fed.Cir.1988) (in light of CIT's intervening

---

**1.** Plaintiffs have also moved for leave to file a reply brief pursuant to this court's Rule 7(d). The filing of such a reply, on a non-dispositive motion, must be approved by the court. *United States Steel Corp. v. United States*, 3 CIT 170 (1982) [available on WESTLAW, 1982 WL 2228]. Defendant has moved to strike plaintiffs' reply brief, which had initially been served without an accompanying motion. In view of the fact that the court is granting plaintiffs' motion, plaintiffs' concerns regarding defendant's interpretations of law, and the injury plaintiffs might suffer if defendant's memorandum remained unrebutted, are unavailing. In the interest of a speedy resolution of this matter, *id.*, the court denies plaintiffs' motion for leave to file a reply brief. Since plaintiffs' reply brief has neither been accepted for docketing, nor considered by the court, defendant's motion to strike is denied.

final decision on the merits at 12 CIT ——, 678 F.Supp. 898 (1988), *appeal docketed,* No. 88–1233 (Fed.Cir. Feb. 11, 1988)) and *British Steel Corp. v. United States,* 647 F.Supp. 928 (1986), *appeal dismissed as moot,* No. 87–1050 (Fed.Cir. Mar. 31, 1987) (due to intervening agency action), *vacated in part,* 11 CIT ——, 661 F.Supp. 68 (1987), *dismissed,* 12 CIT ——, Slip Op. 88–76 (June 13, 1988) [available on WESTLAW, 1988 WL 64914] (pursuant to settlement agreement). *But see Fundicao Tupy S.A. v. United States,* 11 CIT ——, 671 F.Supp. 27 (1987) and 12 CIT ——, Slip Op. 88–32 (March 16, 1988) [available on WESTLAW, 1988 WL 24558] (granting injunctions pending appeals).

## I.

Defendant's main argument is that the court lacks jurisdiction to provide relief. The court finds the reasoning of *Oki* persuasive on the issue of jurisdiction and sees little in either *Fundicao Tupy* or *British Steel* which indicates that the court does not have jurisdiction to provide injunctive relief in this case. Rather, the court finds defendant's arguments to relate to former statutes and not to the ones which govern this action.

Under the Antidumping Act of 1921, which was repealed by the Trade Agreements Act of 1979 and recodified with amendments into the Tariff Act of 1930, antidumping findings were generally not subject to judicial review until actual duties had been assessed and the agency was afforded an opportunity to review its determination in response to filed protests or petitions. 19 U.S.C. §§ 1514, 1515, 1516(a)–(c) (1976). *See* S.Rep. No. 249, 96th Cong., 1st Sess. 245–46, 250 (1979); H.R.Rep. No. 317, 96th Cong., 1st Sess. 181–82 (1979), U.S.Code Cong. & Admin.News 1979, p. 381. Where an investigation culminated in an affirmative antidumping finding, duties were assessed on an entry-by-entry basis at Customs field offices, pursuant to "master lists" which outlined the appropriate calculations and adjustments to be made in a given case. General Accounting Office, Report to the Congress: U.S. Administration of the Antidumping Act of 1921, ID-

79–15, at 33–37 (March 15, 1979). These master lists were based upon exporters' responses to questionnaires, updated every 6 to 12 months. *Id.* at 33–34. Increasingly large backlogs of published master lists resulted in significant delays in the assessment of antidumping duties. *Id.* at 35. In addition, participation at the assessment stage was quite limited, and often on an ex-parte basis. *See Implementation of the Multilateral Trade Negotiations: Hearings Before the Subcomm. on International Trade of the Senate Comm. on Finance,* 96th Cong., 1st Sess. 114, 124 (1979) (statement of Lewis W. Foy, Chairman, American Iron & Steel Institute); *Multilateral Trade Negotiations: Hearings Before the Subcomm. on Trade of the House Comm. on Ways and Means,* 96th Cong., 1st Sess. 108, 111 (1979) (statement of Charles Owen Verrill, Jr., on behalf of AMF, Inc.).

In 1979, the assessment phase of antidumping actions was formalized and restructured to provide for automatic annual assessment proceedings, commonly referred to as "751 reviews." 19 U.S.C. § 1675 (1982) (section 751 of the Tariff Act of 1930). The 1979 Act substituted the time consuming assessment and protest process of the 1921 Act with the new review procedures of section 751, affording parties an increased role in the initial stages of the assessment process and providing enhanced procedural safeguards. S.Rep. No. 249, at 79–81; H.R.Rep. No. 317, at 71–72, 181–82, U.S.Code Cong. & Admin.News 1979, p. 381. In addition, the 1979 Act amended the antidumping law to provide for immediate judicial review of the investigative phase, prior to the institution of a 751 review and assessment of duties. 19 U.S.C. § 1516a(a)(2) (1982 and Supp. IV 1986). *See* S.Rep. No. 249, at 244–47; H.R. Rep. No. 317, at 179–182, U.S.Code Cong. & Admin.News 1979, p. 381. These new provisions for judicial review of initial antidumping duty determinations were intended to expedite judicial review, shorten the overall review process, and reduce the redundancy of administrative proceedings. S.Rep. No. 249, at 250–51; H.R.Rep. No.

317, at 181–82, U.S.Code Cong. & Admin. News 1979, p. 381.

In 1984, Congress further amended the statute to provide for 751 reviews only upon request. This change was described as "designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority." H.R.Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984) (Conference Report). *See* H.R.Rep. No. 725, 98th Cong., 2d Sess. 22–23 (1984), U.S.Code Cong. & Admin.News 1984, p. 4910.[2]

The problem which confronts the parties in this case stems from the residue left by congressional reconsideration of the rate of assessment proceedings, currently conducted by the Department of Commerce, International Trade Administration (ITA). In 1979 Congress substituted a system of assessment, wherein participation was limited largely to post-assessment administrative protest and review, with a system where pre-assessment participation was automatically made available to all parties. In 1984, Congress limited the opportunity for pre-assessment participation, that is, the 751 review, to instances in which it was requested. It failed, however, to clearly indicate the basis for assessment when no 751 review was requested. Congress only stated that, absent a requested 751 review, ITA should provide for the assessment of antidumping duties "including the elimination of suspension of liquidation, and/or

the conversion of cash deposits of estimated duties, previously ordered." H.R.Rep. No. 1156, at 181, U.S.Code Cong. & Admin. News 1984, p. 4910. ITA responded by providing for the automatic assessment of antidumping duties at the cash deposit, or bond, rate in effect at the time of entry. 19 C.F.R. § 353.53a(d) (1987). *See* 19 C.F.R. § 355.10(d) (1987) (similar provision governing countervailing duty cases). Although such regulations might properly apply absent a court challenge to those cash deposit rates, they do not apply in all cases where those cash deposit rates are themselves the subject of a judicial challenge. *See Oki*, 669 F.Supp. at 485 and n. 2. Furthermore, those regulations cannot alter the existing statutory scheme, which provides for liquidation in accordance with a disposition of this court,[3] either prospectively, with regard to subsequently entered merchandise, or retrospectively, where liquidation is enjoined by this court in accordance with its statutory authority. 19 U.S.C. § 1516a(e) (1982) (liquidation in accordance with final court decision); 19 U.S.C. § 1516a(c)(2) (injunctive relief); 28 U.S.C. § 2643(c)(1) (1982) (relief).

■ Against this background, the court is unpersuaded by defendant's argument that the statutory scheme requires plaintiffs, such as the ones here, in every case to request a separate 751 proceeding, and pursue judicial review of the results of that proceeding, in order to receive the benefit of judicial review.[4] Defendant's reading of

---

**2.** The House report described this provision as follows:

> The purpose of amending the annual review requirement is to reduce the administrative burden on the Department of Commerce of automatically reviewing every outstanding order *even though circumstances do not warrant it* or the parties to the case are satisfied with the existing order. The increasing number of outstanding orders subject to review each year poses an unnecessarily heavy burden on limited staff resources.

H.R.Rep. No. 725, at 22–23, U.S.Code Cong. & Admin.News 1984, p. 4910 (emphasis added).

**3.** Even absent 19 U.S.C. § 1516a(e), the court's power to remand an action for disposition consistent with the court's ruling, 19 U.S.C. § 1516a(c)(3), could result in a redetermination of antidumping rates, and the liquidation of

antidumping duties in accordance with that remanded determination. 19 U.S.C. § 1516a(c)(1) ("liquidation in accordance with determination").

**4.** Defendant argues that, absent a 751 review, the court's ruling may have no effect upon either assessments or the rate at which cash deposits are posted on future entries. (Defendant is unclear as to what purpose remains of judicial review of the original ITA determination, but it has not moved to dismiss this action challenging an original determination):

> The statutory scheme precludes review of the duty assessment question in a case in which judicial review is limited to a review of the administrative records of the final less than fair value and/or material injury determinations. Judicial review of a final Commerce determination covers a prior period and does

the statutory scheme is inconsistent with the congressional intent of the 1984 Act to ease the burdens of the parties and ITA by making 751 reviews optional, as well as the intent of the 1979 Act to reduce delays and redundancy in the judicial review process by providing for reviews prior to the institution of assessment proceedings.[5]

Similarly, to the extent one interprets the first *Fundicao Tupy* decision to be based on lack of jurisdiction it must also be interpreted to be based on concerns not reflected in the 1979 and 1984 acts. Specifically, *Fundicao Tupy* stated that the statutory scheme "contemplates that Commerce, in the first instance, be afforded an opportunity to review its determinations in the course of calculating actual dumping margins for a given period." 669 F.Supp. at 439. This appears consistent with the statutory scheme under the 1921 Act, where judicial review was not available until duties were assessed and the agency was given the opportunity to review its determinations, through the protest and review mechanisms, in the first instance. The 1979 Act restructured the balance between administrative and judicial reviews of agency actions, however, providing for judicial review in the first instance, before the agency was afforded an opportunity to review its own determination. With the elimination of automatic 751 reviews in 1984, Congress made it possible for an antidumping order to be judicially reviewed, without being administratively reviewed.

■ In addition, the view expressed in *Fundicao Tupy* that plaintiffs should not obtain injunctive relief in a suit challenging an original determination because they could have requested a 751 review does not compel a finding here of lack of jurisdiction. First, the *Fundicao Tupy* court did not characterize its opinion as one relating to jurisdiction. Second, Congress did not limit the court to providing injunctive relief only in 751 cases. Third, the relief which plaintiffs seek is an injunction and liquidation in accordance with the court's decision in this case. Requesting a 751 review would not provide that relief. That plaintiffs may have requested a 751 review, obtained a temporary suspension of liquidation, challenged that review if dissatisfied, and then moved for injunctive relief, as opposed to simply moving for injunctive relief in this case, is irrelevant to the question of whether the court has jurisdiction to provide relief here.[6]

■ Where the parties have chosen to limit themselves to judicial review of the original determination and have not requested a 751 administrative review, they have indicated their belief that the facts existing during the period covered by the original determination are representative, and that rates established by an original determination, as finally reviewed by the courts, should govern rates for a future period or periods. A party to the administrative proceeding can cut off the continuing effect of the original determination on

not contain data upon which duty assessment can be based with regard to subsequently entered merchandise. The same reasons preclude a determination in this case of a deposit rate for estimated duties for future entries. In the absence of a request for an administrative review under 19 U.S.C. § 1675(a), the parties have waived their right to an *actual* assessment rate, as well as to a new estimated deposit rate based upon that actual assessment rate, and have agreed to accept the estimated deposit rate in place of an actual assessment rate and to accept liquidation and future deposit rates in accordance with the provisions of 19 C.F.R. § 353.53a(d).
Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction, at 10.

5. Defendant seemingly relies entirely upon statements in the legislative history indicating

that 751 reviews need not be conducted when the parties are satisfied with the rate of deposit. It ignores the broader statement of H.Rep. No. 725 at 22–23, U.S.Code Cong. & Admin.News 1984, p. 4910, indicating that other circumstances may not warrant conduct of a review.

6. The court also finds that the availability of 751 review does not compel the court to find lack of irreparable harm, as is demonstrated further in the following section. It should be noted that pursuant to 19 C.F.R. § 353.53a (1987) one does not obtain review and suspension of all pertinent liquidations automatically upon filing a 751 review request. A domestic party must specify the individual producers to be reviewed and reasons for the review. The validity of this regulation is not decided here.

deposit rates or assessments (and afford ITA an opportunity to review its earlier determination) by requesting a 751 review. Thus, where one of the parties wishes assessments to be based on more recent events, it has an avenue for administrative relief. In addition, 751 reviews may create unnecessary burdens for the parties and ITA where they simply repeat actions subsequently found to be erroneous in the judicial review of the original determination. Where no 751 review request based on substantive grounds has been made, the statute does not require a party to make a 751 request merely to provide a jurisdictional basis for the granting of meaningful relief.

In *British Steel*, upon which defendant also relies to support the claim of lack of jurisdiction, the court refused to grant a preliminary injunction based upon a critical factual distinction: an automatic 751 review had already been completed at the time the court was asked to grant a preliminary injunction in a judicial challenge to the underlying countervailing duty determination.[7] The court recognized that enjoining liquidations in that action would be meaningless, since the intervening administrative reviews superceded the effect of the cash deposit rates set forth in the underlying determination and order. 647 F.Supp. at 931. For periods affected by the 1984 Act, liquidations of past entries would be governed by the rates determined in 751 reviews, where requested, or by cash deposit rates, where no review was requested. Cash deposit rates had already been re-determined in completed 751 reviews, and could only be changed by subsequent 751 reviews, or as a result of a judicial challenge to the most recently completed 751 review. Furthermore, plaintiffs' purpose in seeking a preliminary injunction in the *British Steel* case was not to ensure that the court retained its power to provide a meaningful remedy in a judicial review of

the challenged determination and order, but rather as part of a challenge to an entirely distinct administrative action. Specifically, plaintiffs sought to challenge ITA's determination that no timely request for a 751 review was received during the most recent review period, and that duties should therefore be liquidated at the cash deposit rate at the time of entry. The court found that challenge to embrace a new and totally different claim, which could only be challenged in a separate action pursuant to a different jurisdictional statute. 647 F.Supp. at 930–31. Thus, to the extent *British Steel* resolves a jurisdictional issue it is wholly off point.

The court believes that in 1984 Congress continued to provide for review of original determinations for a purpose; such reviews of original determinations are not made obsolete by the provision for annual reviews upon request, but rather have become even more important now that assessments may be based on the original determinations. Only annual reviews, of course, can deal with issues raised by new factual circumstances. Basic methodology can be the subject of both reviews of original determinations and annual reviews. Where injunction is granted, the decision rendered upon review of either will enhance the possibility of meaningful relief. Even without an injunction the court's decision will affect future entries, until a superceding 751 review determination intervenes. 19 U.S.C. § 1516a(c)(3) and (e).

■ Thus, the court is convinced that it has jurisdiction to enter an injunction. The question remaining to be finally resolved, however, is what type of harm plaintiffs must demonstrate in order to establish the likelihood of irreparable injury, so that injunctive relief may be granted. As previously indicated, the court in *Oki* granted injunctive relief, but did not examine this

---

7. As this court has noted in the past, under the 1984 Act:

> if no request is made, there will be no 751 review undertaken and no 751 review subject to judicial scrutiny. Of course, judicial review of the original final ... determination and proceedings will be available. It is only

> when a 751 review has been completed that judicial scrutiny of the previous underlying ... [determination] as to deposit rates is rendered moot.

*PPG Indus. v. United States,* 11 CIT ——, 660 F.Supp. 965, 973 n. 5 (1987).

issue in detail. *Fundicao Tupy* found no irreparable harm because of the opportunity for 751 review, but did not discuss the applicable standard in detail. Likewise, the parties to this litigation have devoted little time to this issue.[8] The issue is addressed in the following part.

## II.

The Federal Circuit has indicated, in the context of a judicial review of a 751 determination, that the consequences of liquidation constitute irreparable injury, where a party's "statutory right to obtain judicial review would be without meaning for the only entries permanently affected by that determination." *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed.Cir. 1983). This court has interpreted *Zenith* in the context of judicial challenges to original negative dumping determinations and concluded that in such cases, "the party seeking injunctive relief must make some showing of immediate and irreparable injury beyond the mere invocation of *Zenith*." *American Spring Wire Corp. v. United States*, 7 CIT 2, 6, 578 F.Supp. 1405, 1408 (1984). *See Bomont Indus. v. United States*, 10 CIT ——, 638 F.Supp. 1334, 1338 (1986) ("an applicant for an injunction suspending liquidations during judicial review of a negative administrative dumping determination must prove irreparable injury along with the other requirements for such extraordinary relief.").

This case involves neither a 751 review, nor a negative administrative dumping determination, nor the pre–1984 law which governed the *Zenith, Spring Wire,* and *Bomont* decisions.[9] The particular challenged administrative determination at issue is a affirmative antidumping determination, governed by post–1984 law, where no 751 review has been conducted for the first review period, or for any subsequent period. The nature of this challenged determination is such that it will provide the basis for liquidation of antidumping duties entered during immediately following review periods, for which no 751 review is

conducted, at rates which were determined in the challenged determination, and which were based upon the record in that challenged determination. Accordingly, the court must determine whether this particular challenged determination presents a situation which is sufficiently similar to that confronted in *Zenith,* as opposed to those confronted in *Spring Wire* and *Bomont,* to warrant a presumption of injury.

Both *Zenith* and *Spring Wire* focused upon the fact that 751 reviews were of a periodic or transient nature, which gave them a particular capacity to elude judicial scrutiny and relief. Absent injunctive relief, the finite set of entries permanently affected by the 751 reviews could be liquidated, and the court's subsequent decision on the merits could have no effect on those entries. *Spring Wire* distinguished negative injury determinations, reasoning that "[t]hose determinations, unlike their 751 counterpart, are not transitory. They will, as a practical matter, extend *in futuro,* unless upset by an intervening judicial decision." 7 CIT at 5, 578 F.Supp. at 1407. In *Bomont* the court distinguished the judicial challenge to a negative dumping determination at issue there, from the challenge to 751 determination in *Zenith,* by noting that

> In an action such as the one at bar, liquidation of past entries at the proper rate of duty is not the "only remedy available." Rather, this proceeding can affect future entries. Thus, the court in *American Spring Wire Corp. v. United States,* 7 CIT 2, 578 F.Supp. 1405 (1984) concluded that the *Zenith* decision did not create an irrebuttable presumption of irreparable harm.

638 F.Supp. at 1337–38.

As indicated, *Zenith* involved a 751 review of an affirmative decision. Under the statutory scheme, liquidation of entries had been suspended until completion of the 751 review. Thus, *Zenith* concentrated on the ability to provide meaningful relief for the past entries which would be permanently affected by the challenged administrative

---

**8.** Defendant did raise this issue along with the challenge to jurisdiction.

**9.** This case also does not involve a superceding 751 review as was the case in *British Steel.*

determination. *Zenith* did not deny that the court's decision could have some future effect, as well. Rather, with respect to the ability to affect future entries, *Zenith* stated that "Any change in deposit rates that might be required would be transient and could not affect the amount of duties assessed on the 1979–80 entries or any subsequent entries."

Under post–1984 law, both 751 reviews and original affirmative antidumping determinations, where no 751 review is requested, possess similar capacities to affect future entries and to provide for permanent assessment for a set of entries. That is, each provides for posting of cash deposits on future entries at a determined rate. In *Zenith* terms, the deposit rates set by each may be considered transient, to the extent that the proceeding is followed by a 751 review. On the other hand, if no 751 review is requested in the immediately following review period, the cash deposit rate set in either type of determination will be used as the basis for permanent assessment of antidumping duties for a certain set of entries, as well as for cash deposit rates for a future period or periods.

■ Under the circumstances of this case only this litigation can permanently affect the entries subject to immediate liquidation and the effect of this proceeding on future entries is just as transitory as it is in current 751 reviews. That is, if a 751 review is requested in the future the review determination will terminate the effect of this litigation on future entries. Thus, to some extent, although to a lesser extent than in the *Zenith* case which involved mandatory 751 reviews, the potential for elusion of judicial scrutiny is of some concern in this case, as it is in post–1984 751 review cases. To the court's knowledge, defendant does not oppose injunctive relief in post–1984 751 review cases even though, as here, lack of mandatory 751 reviews diminishes the potential for elusion of scrutiny.

■ Finally, the court notes that the question of injury, and to what extent it

must be established in each case, turns to a certain extent upon the procedural circumstances of each case, and the positions of the moving party and the particular facts established by the parties. In this case, unlike a review of a negative determination, liquidation has already been suspended. If a 751 review were conducted, suspension would have continued. Injunction following an affirmative determination preserves the status quo, as it does not in a review of a negative determination. Furthermore, where, as here, the moving party seeks to enjoin the liquidation of its own entries, there is a more apparent relationship between liquidation and its economic effects on the moving party than where the moving party seeks to enjoin the liquidation of competitors' entries.[10] In cases such as *Spring Wire*, where no material injury to the domestic industry was found, the relationship between liquidation and injury to the moving domestic party may be even less apparent.

As in the *Oki* case, concerns for judicial economy as well as fairness to the parties weigh in favor of preliminary injunction which would serve to preserve the court's jurisdiction, discourage duplicate litigation and needless annual reviews, and avoid the loss of any right to challenge assessment of duties on past entries. By granting a preliminary injunction, plaintiffs will be properly assessed for all entries, all potentially recurring issues can be fully litigated, the CIT need only decide an issue once and the Court of Appeals need only review it once.

Accordingly, the court finds that if injunction is not granted in this case, there will be irreparable harm to plaintiffs because of the combination of unchallengeable liquidation of their past entries, loss of meaningful opportunity for judicial review as to such entries, and the requirement of filing annual reviews merely to obtain injunctive relief.

Under the facts of this case, the four-part test for injunctive relief is satisfied.

---

**10.** Although plaintiff has not provided particularized economic data, neither has defendant.

In the circumstance of this case, the court finds plaintiff has met its burden.

**1376**

Only plaintiffs will suffer harm if the stay is not granted. Defendant loses nothing by the stay. The court has already found part of Ipsco's challenge to have merit, *Ipsco, Inc. v. United States*, 12 CIT ——, 687 F.Supp. 633 (1988), and the discussion, *supra*, of the statutory scheme, indicates the injunctive relief is consistent with public policy. The parties shall consult and plaintiffs shall submit a proposed preliminary injunction order within 10 days.

SO ORDERED.