BROTHER INDUSTRIES (USA), INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND SMITH CORONA CORP., DEFENDANT-INTERVENOR

Court No. 93–06–00359

(Dated July 26, 1993)

*Hogan and Hartson (Lewis E. Leibowitz, T. Clark Weymouth* and *David G. Leitch)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, *(Jeffrey M. Telep)* for defendant.
*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert de Prest, Patrick M. McDonough* and *Margaret L.H. Png)* for defendant-intervenor.

## MEMORANDUM DECISION AND ORDER

RESTANI, *Judge:* On June 25, 1993, plaintiff, Brother Industries, USA, Inc. ("Brother"), filed an application for a temporary restraining order and a motion for a preliminary injunction, seeking to enjoin the United States Department of Commerce ("Commerce") from implementing a suspension agreement in the case, *Certain Portable Electric Typewriters ("PETs") from Singapore,* 58 Fed. Reg. 7534 (Feb. 8, 1993) (preliminary determination of sales at less than fair value). Brother's challenge to the suspension agreement is, in essence, that it fails to completely eliminate

less than fair value sales, is based on unverified data, cannot be monitored effectively, and is not in the public interest.

On June 25, 1993, this court granted plaintiff's application for a temporary restraining order, and enjoined the United States from:

> (i) liquidating any and all entries of portable electric typewriters from Singapore which are or have been the subject of administrative proceedings resulting in [the preliminary determination of sales at less than fair value] * * *, (ii) refunding any cash deposit or releasing any bond or other security collected pursuant to 19 U.S.C. § 1673b(d)(2), and (iii) taking any action to implement the aforementioned Suspension Agreement * * *.

"Temporary Restraining Order," issued by Judge Thomas J. Aquilino, Jr., dated June 25, 1993. On July 9, 1993, the court granted the motion of Smith Corona Corporation ("SCC") to intervene. The United States then moved to dismiss on the grounds of lack of subject matter jurisdiction. On July 12, 1993, following oral argument on the preliminary injunction motion, this court found that it had colorable jurisdiction and extended the first two conditions of the temporary restraining order for ten days; the court lifted the third condition, pertaining to implementation of the suspension agreement, thereby permitting Commerce to proceed with publication in the Federal Register of the notice of the suspension agreement. The case is before the court on defendant's motion to dismiss and plaintiff's motion for a preliminary injunction.

## DISCUSSION

In *Brother Industries (USA), Inc. v. United States,* 16 CIT 789, 801 F. Supp. 751 (1992), this court reversed Commerce's determination, and held that Brother was an interested party, with standing to file an antidumping petition. 16 CIT at 795, 801 F. Supp. at 758. The court remanded the case for Commerce to consider whether Brother had filed on behalf of the domestic industry, and if so, to proceed with its investigation. 16 CIT at 795, 801 F. Supp. at 759. Following dismissal of appeals filed with the Federal Circuit, Commerce resumed its investigation. It determined that Brother filed its petition on behalf of the domestic industry, and that PETs from Singapore were being or were likely to be sold in the United States at less than fair value. It ordered suspension of liquidation of all entries of PETs from Singapore on or after February 8, 1993, and required cash deposits or the posting of bonds in the amount of 16.02 percent. *Certain PETs from Singapore,* 58 Fed. Reg. at 7537. On June 22, 1993, Commerce and SCC entered into a suspension agreement, under which Commerce would suspend its antidumping investigation provided SCC made the price revisions necessary to eliminate dumping. On that same day, SCC requested that Commerce continue the antidumping investigation, despite the suspension agreement. Three days later, Brother filed its application for a temporary restraining order.

The first issue is whether, at this juncture in the case, the court has subject matter jurisdiction. Brother attempts to base jurisdiction on 28 U.S.C. § 1581(c) or § 1581(i). The government claims that jurisdiction is lacking because Commerce has not yet published notice of the suspension agreement in the Federal Register. Section 1581(c) provides that the court has exclusive jurisdiction over any civil action commenced under 19 U.S.C. § 1516a. That section requires publication as a jurisdictional prerequisite to judicial review of a determination to suspend an antidumping duty investigation. *See* 19 U.S.C. §§ 1516a(a)(2)(A)(I), 1516a(a)(2)(B)(iv). In this case, as publication has not yet taken place, jurisdiction cannot be based on § 1581(c).[1]

Jurisdiction may, however, be based on § 1581(i). Section 1581(i) permits the exercise of jurisdiction when the other bases specified under §§ 1581(a)–(h) are unavailable or "manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 1041 (1988).[2] In this case, a sufficient showing has been made that jurisdiction under § 1581(c), which requires Brother to wait until after publication, is manifestly inadequate. The harm that Brother seeks to avoid, resulting from liquidation of entries of PETs from Singapore, could occur as soon as the notice is published in the Federal Register. *See* 19 U.S.C. §§ 1673c(f)(1)(C), 1673c(f)(2)(A)(ii)–(iii). Although defendant now asserts that liquidation is unlikely to occur immediately after publication and Brother will have an opportunity to seek judicial relief, the fact is that defendant was unable to give Brother assurances to this effect. Under these circumstances, the remedy provided by § 1581(c) is manifestly inadequate, and jurisdiction is proper under § 1581(i). In any event, the court notes that the issue may be moot because publication is imminent, if it has not already taken place.

The second issue is whether Brother has established a right to a preliminary injunction. In making this determination, the court considers the following factors: (1) likelihood of success on the merits; (2) threat of immediate irreparable harm if the injunction is denied; (3) balance of hardships; and (4) public interest. *Techsnabexport, Ltd. v. United States,* 16 CIT 420, 426, 795 F.Supp. 428, 435 (1992).

Brother argues that it will suffer irreparable harm if the injunction is not issued in that, if suspension of liquidation terminates and cash deposits or bonds posted by Smith Corona are released, it will have no effective remedy as to entries made between February 8, 1993 and the date the court decides the merits of this case. During this time period,

---

[1] Brother also argues that this court may issue an injunction prior to publication, based on 19 U.S.C. § 1516a(c)(2). That section, however, does not provide an independent basis of jurisdiction.

[2] The United States attempts to equate manifestly inadequate remedies with the threat of irreparable harm. The latter is one of the prerequisites for injunctive relief and connotes imminent, actual, severe and irremediable harm. A showing of irreparable harm will normally satisfy the manifestly inadequate standard, but one need not always make this showing in order to assert jurisdiction under § 1581(i). Where Congress wished to limit jurisdiction by such a strict standard, it did so expressly. *See* 28 U.S.C. § 1581(h). The manifestly inadequate standard is a judicial gloss on the actual words of Congress 28 U.S.C. § 1581(i) and the structure of the entire jurisdictional statute. The words "irreparable harm" do not appear.

according to Brother, SCC will reap the benefits of dumping, and Brother will suffer a competitive disadvantage.

In *Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983), Zenith challenged an annual review determination made by Commerce pursuant to 19 U.S.C. § 1675. The Federal Circuit held that Zenith had established irreparable harm because "liquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin" on entries during the review period. *Id.* at 810. The court noted that once liquidation occurred, not even prospective relief would be available as to entries made during the review period. *Id.*

Brother claims that the circumstances present in *Zenith*—injury to a competitive interest and denial of effective judicial review—also exist in this case. Brother is incorrect. As this court has held, in cases that do not involve annual reviews, prospective relief is available and liquidation of another's entries normally is insufficient to establish irreparable harm. *Trent Tube Div. v. United States,* 14 CIT 587, 588, 744 F. Supp. 1177, 1179 (1990) (in domestic party's challenge to less than fair value or injury determinations, liquidation alone does not establish irreparable harm); *Bomont Indus. v. United States,* 10 CIT 431, 435, 638 F. Supp. 1334, 1338 (1986) (in challenge to negative less than fair value determination, liquidation of past entries at proper rate of duty is not only remedy available, and applicant for injunction must prove irreparable harm); *American Spring Wire Corp. v. United States,* 7 CIT 2, 6, 578 F. Supp. 1405, 1408 (1984) (in challenge to final negative injury determinations, showing of irreparable harm beyond mere invocation of *Zenith* is required). This case does not fall within the presumption of irreparable harm created by *Zenith;* in order to prevail, Brother must show additional evidence of irreparable harm.

At the hearing, Brother attempted to demonstrate irreparable harm in two aspects. It asserted that 1) upon liquidation, the release of any cash deposits would give SCC a competitive edge, and 2) SCC is stockpiling PETs for entry into the United States after the suspension agreement takes effect. To support its theories of irreparable harm, Brother relied on the testimony of the president of Brother International Corporation. Brother's first claim fails utterly. SCC posted bonds, not cash deposits, so there is no likelihood that a cash flow will suddenly become available. Second, the testimony as to the stockpiling of PETs was entirely speculative. The witness conceded that he had no firsthand knowledge of stockpiling, and although there was some evidence that exports from Singapore did not coincide with imports into the United States during 1993, this was also the case in January 1993, prior to the time liquidation was suspended. As Brother has failed to establish irreparable harm, its motion for a preliminary injunction is denied. The parties shall submit a proposed briefing schedule with respect to the merits of this action within ten days of the date of this order.