OKI ELECTRIC INDUSTRY
COMPANY, LTD., Plaintiff,

v.

UNITED STATES, Defendant,

Motorola, Inc., Texas Instruments, Inc.,
Micron Technology, Inc.,
Defendants-Intervenors.

Court No. 86–07–00833.

United States Court of
International Trade.

Aug. 28, 1987.

Wilmer, Cutler & Pickering (A. Douglas Melamed, on the brief, and motion, John D. Greenwald, on the brief, and Barry A. Spergel, on the motion) for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (J. Kevin Horgan, on the motion, Velta A. Melnbrencis, on the brief), and Office of the Deputy Chief Counsel for Intern. Trade, U.S. Dept. of Commerce (Andrea Migdal, on the motion) for defendant.

Micron Technology, Inc. (Larry L. Grant, on the motion), for defendants-intervenors.

## MEMORANDUM OPINION

CARMAN, Judge:

Plaintiff, OKI Electric Company, Ltd. (OKI) moves for a preliminary injunction to enjoin the liquidation of certain entries of 64K DRAMs [1] from Japan which were entered or withdrawn from warehouse for consumption on or after December 11, 1985. This Court previously granted plaintiff's application for a temporary restraining order (TRO). At the hearing for the preliminary injunction, the parties consented to the extension of the TRO until August 26, 1987, upon which date this Court entered its order granting plaintiff's motion.

## FACTS

In the latter part of June 1985, Micron Technology, Inc. filed petitions with the Department of Commerce (Commerce) and the International Trade Commission (ITC) alleging imports of 64K DRAMs from Japan were being sold or were likely to be sold in the United States at less than fair value (LTFV) and these imports were materially injuring or were threatening material injury to a domestic industry producing a like product. Accordingly, Commerce initiated an antidumping investigation, and the ITC commenced an injury investigation.

During the course of the investigation, Commerce examined sales of the subject merchandise for the period of January 1, 1985 through June 30, 1985. On December 11, 1985, Commerce published an affirmative preliminary LTFV determination which resulted in the suspension of liquidation and the commencement of the collection of estimated antidumping duty deposits, at the rate of 12.52% *ad valorem*, on plaintiff's entries of 64K DRAMs from Japan made on or after that date. *64K Dynamic Random Access Memory Components (64K DRAMs) From Japan; Preliminary Determination of Sales at Less Than Fair Value.* 50 Fed.Reg. 50649 (1985).

Notice of the final affirmative LTFV determination, regarding the subject merchandise, was published by Commerce on April 29, 1986. *64K Dynamic Random Access Memory Components (64K DRAMs) From Japan: Final Determination of Sales at Less Than Fair Value.* 51 Fed.Reg. 15943 (1986). This notice also stated Commerce was directing Customs to collect deposits at the rate of 35.34% *ad valorem* on plaintiff's entries and was notifying the ITC of the determination. On June 11, 1986, the ITC published notice of its final determination that an industry in the United States was materially injured by reason of the imports from Japan of 64K DRAMs. *64K Dynamic Random Access Memory Components (64K DRAMs) From Japan.* 51 Fed.Reg. 21258 (1986). Consequently, based upon these final affirmative antidumping determinations, Commerce published an antidumping duty order covering the 64K DRAMs from Japan on June 16, 1986. *Antidumping Duty Order; 64K Dynamic Random Access Memory Components (64K DRAMs) From Japan.* 51

---

**1.** 64K DRAMs are monolithic integrated circuits (semiconductors) that are used primarily in computers and are capable of storing and retrieving data.

Fed.Reg. 21781 (1986). Commerce also established the estimated antidumping duty rate, on plaintiff's entries, at 35.34% *ad valorem.*

Shortly thereafter, OKI commenced this action pursuant to 28 U.S.C. § 1581(c). In Count I of its complaint, OKI challenged the lawfulness of the antidumping order. OKI alleged Commerce made numerous legal and factual errors and alleged the determination of sales at LTFV and of the deposit rates for entries during the pendency of this action were erroneous and not in accordance with law. Plaintiff then filed a motion for judgment upon the agency record in accordance with Rule 56.1 of the Rules of this Court. Defendant has not yet responded to that motion, which is still pending.

In Count II of the complaint, OKI alleged regardless of the lawfulness of the antidumping order and the final determination, Commerce erred by imposing an excessive deposit rate on entries between April 29, 1985 (the date of publication of the final determination) and June 16, 1985 (the date of publication of the antidumping order) in violation of 19 U.S.C. § 1673e(a)(3).

While this action, challenging the deposit rate set by the final antidumping duty order, has been pending, the first anniversary month of the antidumping duty order covering 64K DRAMs from Japan occurred in June of 1987. On June 30, 1987, plaintiff requested an administrative review pursuant to 19 U.S.C. § 1675(a) for the period December 11, 1985 through May 31, 1987. On July 31, 1987, however, plaintiff withdrew this request, and as none of the other parties requested an administrative review of plaintiff's entries, no review was undertaken. Consequently, Commerce, in accordance with its regulations, notified OKI it intended to assess and liquidate the subject entries at the deposit rate established in the final antidumping order. *See* 19 C.F.R. § 353.53a(b)

Plaintiff, in this proceeding, now seeks to restrain and enjoin the liquidation of those entries of 64K DRAMs from Japan.

## BACKGROUND

In general, when a proper petition alleging foreign merchandise is being sold in the United States at less than fair value and a domestic industry is being materially injured, is threatened with material injury, or the establishment thereof is materially retarded, Commerce and the ITC, respectively, are required to initiate LTFV and injury investigations. 19 U.S.C. § 1673a; 19 C.F.R. § 353.37. The LTFV investigation usually covers a period from at least 150 days prior to and 30 days after the first date of the month during which the petition was received in acceptable form. 19 C.F.R. § 353.38.

If the ITC makes an affirmative preliminary determination of material injury within 45 days after the date on which the petition has been filed or on which it receives notice an investigation has been commenced, Commerce usually will make a preliminary LTFV determination within 160 days after the filing of the petition. 19 U.S.C. § 1673b; 19 C.F.R. § 353.39. If the preliminary LTFV determination is affirmative, then there is a suspension of the liquidation of the subject entries which were entered or withdrawn from warehouse on or after the date of publication of the determination notice. Importers are required to post a cash deposit, bond, or other security for the payment of estimated antidumping duties equal to the amount the foreign market value exceeds the United States price. 19 U.S.C. § 1673b(d); 19 C.F.R. § 353.39.

If the final determinations of Commerce and the ITC are affirmative, then an antidumping duty order is published and the liquidation of entries of the subject merchandise continues to be suspended. 19 U.S.C. § 1673d; 19 C.F.R. §§ 353.44, 353.-48. The preliminary and final determination rates are used initially only as the basis for the collection of bond or cash deposits of *estimated duties* on entries made on or after the date of publication of the affirmative preliminary or final LTFV determination. *See PPG Industries, Inc. v. United States*, 11 CIT ——, ——, 660 F.Supp. 965, 969 (1987).

Each year, in accordance with 19 U.S.C. § 1675(a) and 19 C.F.R. § 353.53a, any interested party may obtain an administrative review (751 review) to determine the actual duties to be assessed on the entries subject to the antidumping duty order and to establish future estimated duties to be deposited. The 751 review is obtained by filing a proper request for review during the anniversary month of the publication of an antidumping duty order. If a request for review is timely received, the 751 review usually encompasses entries made during the twelve months immediately preceding the most recent anniversary month. 19 C.F.R. § 353.53a(b)(1). If the request for review is received during the first anniversary month after publication of an antidumping order, then, the first annual administrative review will cover the period from the date when liquidation of entries was first suspended to the end of the month immediately preceding the anniversary month. 19 C.F.R. § 353.53a(b)(2).

If Commerce receives no request for review during any anniversary month, then the entries during the immediate preceding time are not examined to determine the duties to be assessed. Instead, Commerce instructs Customs to assess antidumping duties at the rates of the estimated antidumping duty deposits that had been collected at the time of entry. The Customs Service is further instructed by Commerce to continue to collect estimated future duty deposits at the rate established in the final antidumping duty order ("the cash deposit previously ordered"). 19 C.F.R. § 353.-53a(d).

## DISCUSSION

It is well settled a preliminary injunction is an extraordinary remedy. Before such relief can be granted, the moving party must establish: (1) that it is likely to prevail on the merits of its claim; (2) that without the injunction, it will be immediately and irreparably harmed; (3) that the balance of hardship on all the parties favors the movant; and (4) that the public interest will be better served by issuing rather than denying the injunction. *Matsushita Electric Industrial Co. v. United States*, 823 F.2d 505, 509, (Fed.Cir.1987) *petition for reh'g filed; Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983).

Plaintiff contends this Court should enjoin liquidation: (1) to prevent the defendant from denying plaintiff its right not to pay unlawful antidumping duties; (2) to prevent defendant from denying plaintiff its right to judicial review of the final determination and the unlawful deposit rate assessments determined by Commerce; and (3) to protect the jurisdiction of this Court over the subject matter of this action. Plaintiff urges in accordance with the *Zenith* decision that unless this Court grants the preliminary injunctive relief requested, it will suffer irreparable harm. Citing *Bell-Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 (2nd Cir. 1983), plaintiff alleges where the moving party has raised sufficiently serious questions going to the merits and rendering the issues fair ground for litigation; and has demonstrated a fair balance of hardship, the scale should be decidedly tipped in favor of the party seeking preliminary relief.

The defendant and the defendant-intervenor, in opposition to plaintiff's above argument, contend this Court lacks jurisdiction to decide the issues in this proceeding. According to the defendants' argument, since plaintiff commenced this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516(a)(2)(B) challenging the final affirmative LTFV determination covering 64k DRAMs from Japan and not the assessment determination made pursuant to 19 C.F.R. §§ 353.53a(b), the only way plaintiff can challenge the duties assessed is to commence a new action. Both the defendant and the defendant-intervenor contend plaintiff has failed to establish irreparable harm by the liquidation of entries. They argue mere substantial nonrecoverable financial loss is insufficient to warrant the issuance of the preliminary injunction. Since plaintiff has also failed to demonstrate that the balance of hardship or the public interest favors granting plaintiff's application for a preliminary injunction, the defendant and

the defendant-intervenor maintain the preliminary injunction should be denied.

The primary issue in this case revolves around one of the effects of a recent amendment to section 751 of the Tariff Act of 1930, as amended by the Trade and Tariff Act of 1984, 19 U.S.C. § 1675. This section, as amended, provides, in part, as follows:

§ 1675. **Administrative review of determinations**

(a) **Periodic review of amount of duty.—**

(1) **In general.—**At least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—

(A) review and determine the amount of any net subsidy,

(B) review and determine ... the amount of any antidumping duty, ...

\* \* \* \* \* \*

and shall publish the results of such review, together with notice of any duty to be *assessed,* estimated duty to be deposited, or investigation to be resumed in the Federal Register.

19 U.S.C.A. § 1675(a)(1) (1980 & Supp.1986) (emphasis added).

Prior to 1984, automatic periodic reviews were required at least once during each 12-month period beginning on the anniversary date of the publication of an antidumping order *even though a request for such a review had not been made. See* section 1675 of the Trade Agreements Act of 1979; *See also, British Steel Corp. v. United States,* 10 CIT ——, ——, 647 F.Supp. 928, 929 n. 2 (1986), *appeal dismissed,* —— F.2d —— (Fed.Cir.1987).

Apparently, the legislative change was designed to eliminate unnecessary administrative reviews and alleviate the burgeoning case load of Commerce. The House Report said:

The purpose of amending the annual review requirement is *to reduce the administrative burden on the Department of Commerce of automatically reviewing every outstanding order even though circumstances do not warrant it or parties to the case are satisfied with the existing order.* The increasing number of outstanding orders subject to review each year imposes an unnecessarily heavy burden on limited staff resources.

H.R.Rep. No. 725, 98th Cong., 2d Sess. 22-23, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4910, 5127, 5149 (emphasis added).

The question this Court must decide is should the Court enjoin the liquidation of the entries pursuant to regulations of Commerce which provide for automatic assessment under 19 CFR § 353.53a(d), where the plaintiff has challenged, in this action, the lawfulness of an antidumping order and final determination without requesting a 751 review. The Court must first determine if it has jurisdiction to entertain plaintiff's application for a preliminary injunction.

The statutory authority for injunctive relief, in this case, provides as follows:

(2) **Injunctive relief.—**In the case of a determination described in paragraph (2) of subsection (a) of this section [an antidumping order] by the Secretary, the administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

19 U.S.C.A. § 1516a(c)(2) (1986).

Liquidation, in accordance with the final decision of the Court, is provided for as follows:

**(e) Liquidation in accordance with final decision**

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—

\* \* \* \* \* \*

(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

shall be liquidated in accordance with the final court decision in the action. Such notice of court decision shall be published within ten days from the date of the issuance of the court decision.

19 U.S.C.A. § 1516a(e)(2) (1980 & Supp. 1986)

This Court concludes it has jurisdiction to entertain plaintiff's application for a preliminary injunction. *See Zenith Radio,* 710 F.2d 806; *Bomont Industries v. United States,* 10 CIT ——, 638 F.Supp. 1334 (1986); *Smith-Corona Group, Consumer Products Division v. United States,* 1 CIT 89, 507 F.Supp. 1015 (1980), *aff'd,* 713 F.2d 1568 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

Although plaintiff, in its motion, urges this Court to rule on the validity of the automatic assessment regulation, defendant maintains the Court lacks jurisdiction to consider the validity of the regulation.

The regulation, in question, provides for the automatic assessment of duties when a 751 review has not been requested. It provides, as follows:

(d) *Automatic Assessment of Duties*

(1) For orders or findings, if the Secretary does not receive a timely request [for a 751 review] the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise [generally during the twelve months immediately preceding the most recent anniversary month] at rates equal to the cash deposit of (or bond for) estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption and to continue to collect the cash deposit previously ordered.

19 C.F.R. § 353.53a(d)(1) (1986).

■ Defendants emphasize this action was commenced pursuant to 19 U.S.C. § 1516(a)(2)(B) and 28 U.S.C. § 1581(c) challenging the final affirmative determination of LTFV sales and the antidumping order issued by Commerce. According to defendants, since plaintiff's challenge to the regulation contained in 19 CFR § 353.53a(d)(1) appeared for the first time in plaintiff's application for the temporary restraining order and preliminary injunction and not as a challenge to the final determination, the validity of the regulation is not within the scope of jurisdiction underlying this action challenging the underlying LTFV investigation. In short, continue defendants, to challenge the assessment rate and the validity of the regulation, plaintiff must commence a new action. This Court agrees the validity of the regulation cannot be properly determined within the scope of this action.[2] *See* 19 U.S.C. § 1516a(b)(2) (Judicial review limited to the scope of the record). This Court holds, nevertheless, the regulations requiring automatic assessment of entries covered by the first 751 review period simply do not apply in this case.

In 1984, Congress amended the 751 review provisions of the Tariff Act of 1930 to require these reviews be held only on request. Prior to 1984, 751 reviews were conducted on an annual basis automatically. The purpose of the amendment was to lighten the burden of an already heavy caseload faced by Commerce which was required to conduct 751 reviews regardless of whether or not they were needed.

Commerce contends notwithstanding a lawsuit challenging the original LTFV order, an importer must request a 751 review to preserve its rights or waive its right not to have its entries automatically assessed. This Court finds such interpretation is con-

**2.** Although this Court cannot determine the validity of the regulation in this action, presumably, if there were no court challenge to the antidumping order and final determination, the regulation would seem to apply.

trary to the intent of Congress. Congress sought to avoid unnecessary 751 reviews where the parties to the case were satisfied. If plaintiff was satisfied in this case, it presumably would not have mounted a legal challenge to the LTFV determination in the first place. This Court must reject the arguments of Commerce. To hold otherwise would presumably result in the increase of more unnecessary 751 reviews as importers will undoubtedly request 751 reviews simply to preserve their rights and avoid the automatic assessment provisions of the regulation. This result would add wasteful costs, occasion futile delays and add unnecessarily to the already burgeoning caseload of Commerce, all contrary to the intent of Congress.

Important to note, the automatic assessment regulation should not be construed to deprive this Court of jurisdiction in this case. The statutory scheme under 19 U.S.C. § 1516a(c)(2) provides the Court can enjoin liquidation of entries in a proper case and liquidation is to be in accordance with the final decision by the Court. 19 U.S.C. § 1516a(e).

It is clear, only by injunctive relief can this Court ensure the assessment of duties for the entries in the first 751 review period (those which occur generally during the twelve months immediately preceding the most recent anniversary month) will be consistent with its underlying decision. If an injunction were not to issue, plaintiff would be effectively deprived of its right to judicial review. The subject entries would be assessed and liquidated. This Court would be powerless to remedy any harm occasioned by agency errors on those entries.

There is the additional authority of the All Writs Act for this Court to exercise its equity power of injunction to preserve its jurisdiction and concomitantly preserve the rights of the plaintiff. The All Writs Act, 28 U.S.C. § 1651(a); *See Al Tech Specialty Steel Corp. v. United States,* 6 CIT 254, 575 F.Supp. 1285 (1983). The All Writs Act, in part, provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C.A. § 1651(a) (1980).

The Supreme Court, in discussing the All Writs Act, observed:

If the administrative agency has committed errors of law for the correction of which the legislature has provided an appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before correction could be made.

*Al Tech,* 6 CIT at 256, 575 F.Supp. at 1286 (quoting *Scripps-Howard Radio Inc. v. FCC,* 316 U.S. 4, 10, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942)).

This Court holds it must grant the preliminary injunction sought by plaintiff if plaintiff has met its burden showing it is entitled to such extraordinary relief.

■ Plaintiff has established it will suffer immediate irreparable harm, not only because of economic loss occasioned by the liquidation of the entries, but additionally by the deprivation of its statutory right to obtain meaningful judicial review. The public interest will be better served by issuing rather than denying the injunction since unnecessary time consuming and costly administrative reviews will be avoided by the government. The public interest is also served by courts providing meaningful judicial review. The balance of hardship favors the movant plaintiff because the hardship to the government apparently consists only of the inconvenience of delay in liquidation. If plaintiff is not able to enjoin liquidation, it will lose its duty deposits as well as suffer the loss of meaningful judicial review. Although the Court cannot determine, at this time, if plaintiff is likely to prevail on the merits, it has determined on a sliding scale analysis of the criteria to be considered in whether or not to grant a preliminary injunction, and in particular, the criterion of irreparable injury, the equities overwhelmingly favor plaintiff's application. *See Bell-Howell: Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42 (2nd Cir.1983); *PPG Industries, Inc. v. United States,* 11 CIT ——, Slip Op. 87-3 (January 9, 1987). This Court holds

plaintiff has met its burden showing it is entitled to the extraordinary relief of a preliminary injunction.

Accordingly, it is hereby ordered defendant is restrained and enjoined from liquidating any and all entries of 64K DRAMs from Japan which were entered or withdrawn from warehouse for consumption on or after December 11, 1985, for the twelve month period immediately preceding the most recent anniversary month to request the first 751 review. This is in accord with the order of this Court dated August 26, 1987.