Slip Op. 06-152

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                            :
TEMBEC, INC.,                                    :
                                                            :
                    Plaintiff,                         :
                                                            :
          and                                            :
                                                            :
GOVERNMENT OF CANADA,               :
GOUVERNEMENT DU QUEBEC,           :
GOVERNMENT OF ONTARIO,              :
GOVERNMENT OF ALBERTA,              :
GOVERNMENT OF BRITISH                 :
COLUMBIA, CANADIAN LUMBER        :
TRADE ALLIANCE, and ABITIBI-        :          Before: Jane A. Restani, Chief Judge,
CONSOLIDATED, INC.,                       :          Judith M. Barzilay & Richard K. Eaton,
                                                            :          Judges
                    Plaintiff-Intervenors,       :
                                                            :          Consol. Court No. 05-00028
          v.                                              :
                                                            :
UNITED STATES,                                  :
                                                            :
                    Defendant,                       :
                                                            :
          and                                            :
                                                            :
COALITION FOR FAIR LUMBER          :
IMPORTS EXECUTIVE COMMITTEE,   :
                                                            :
                    Defendant-Intervenor.     :
_____:

**<u>OPINION</u>**

Decided: October 13, 2006

[Cash deposits on entries of softwood lumber from Canada, the liquidation of which is
suspended, refunded to Plaintiffs.]


<u>Baker & Hostetler, LLP</u> (<u>Elliot Jay Feldman</u>, <u>Bryan Jay Brown</u>, <u>John Burke</u>, <u>Robert Lewis
LaFrankie</u>) for Plaintiff Tembec, Inc.

Arnold & Porter, LLP (Michael Tod Shor) for Plaintiff-Intervenor Abitibi-Consolidated, Inc.

Steptoe & Johnson, LLP (Mark Astley Moran, Alice Alexandra Kipel, Sheldon E. Hochberg, Michael Thomas Gershberg) for Plaintiff-Intervenor Canadian Lumber Trade Alliance Executive Committee.

Arent Fox Kintner Plotkin & Kahn, PLLC (Matthew J. Clark, Keith Richard Marino) for Plaintiff-Intervenor Gouvernement du Quebec.

Hogan & Hartson, LLP (Mark S. McConnell, Craig Anderson Lewis, Harold Deen Kaplan, Jonathan Thomas Stoel) for Plaintiff-Intervenor Government of Ontario.

Akin, Gump, Strauss, Hauer & Feld, LLP (Spencer Stewart Griffith, Bernd G. Janzen, Anne K. Cusick, Jason Alexander Park) for Plaintiff-Intervenor Government of British Columbia.

Weil, Gotshal & Manges, LLP (M. Jean Anderson, Amy Tross Dixon, Gregory Husisian, Jahna Hartwig, John Michael Ryan, J. Sloane Strickler); Wilmer, Cutler, Pickering, Hale & Dorr, LLP (Randolph Daniel Moss) for Plaintiff-Intervenor Government of Canada.

Arnold & Porter, LLP (Claire Elizabeth Reade) for Plaintiff-Intervenor Government of Alberta.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; (Jeanne E. Davidson), Deputy Director; (Stephen Carl Tosini), Commercial Litigation Branch, Civil Division, United States Department of Justice; Dean Pinkert, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce; Theodore R. Posner, Associate General Counsel, Office of the United States Trade Representative for Defendant United States.

Dewey Ballantine, LLP (Kevin M. Dempsey, Alan William Wolff, Harry Lewis Clark, David Adrian Bentley) for Defendant-Intervenor Coalition for Fair Lumber Imports Executive Committee.


Per Curiam:  On July 21, 2006, the court issued its opinion in Tembec, Inc. v. United States, 30 CIT __, 441 F. Supp. 2d 1302 (2006) ("Tembec I"), in which it found invalid the action of the United States Trade Representative ("USTR") ordering the implementation[1] of a United States International Trade Commission ("ITC") affirmative threat of material injury

---

[1]      The parties and the court use the term "implement" to indicate action taken by the United States Department of Commerce to "give domestic legal effect" to a determination by Commerce or the United States International Trade Commission.  See Tembec I, 30 CIT at __, 441 F. Supp. 2d at 1310, n.10.

determination arising from imports of Canadian softwood lumber into the United States.  In that opinion, the court reserved decision on the remedy to be imposed, i.e., the extent to which cash deposits made on the importation of the Canadian merchandise must be refunded.  This opinion addresses the remedy issue.

Plaintiff Tembec, Inc. ("Tembec"), Plaintiff-Intervenors Canadian Lumber Trade Alliance ("CLTA"), and the Governments of Canada[2] (collectively "Plaintiffs"); Defendant United States, and Defendant-Intervenor Coalition for Fair Lumber Imports Executive Committee ("CFLI") (collectively "Defendants"); and the court all agree that the deposits made on merchandise that entered the United States after the publication of the Timken notice[3] must be refunded.  In its analysis, the court now concludes that because liquidation is suspended for most of the entries made on or prior to the Timken notice, they are preserved for liquidation in accordance with the final decision of the North American Free Trade Agreement ("NAFTA") panel.[4]  The court, therefore, finds that the refund of the deposits on such entries is required as well.  As we explained in Tembec I, the court has jurisdiction to grant this relief.

## I.  Background

The history of this case is set out in the court's opinion in Tembec I.  What follows is as much of that history as is necessary here.  On May 16, 2002, the ITC reached its amended final

---

[2]      In this opinion, "Governments of Canada" refers to the Government of Canada and the Governments of Alberta, British Columbia, Ontario, and Quebec.

[3]      In Timken Co. v. United States, 893 F.2d 337, 340 (Fed. Cir. 1990), the United States Court of Appeals for the Federal Circuit held that Commerce must publish notice of a decision of this Court that is "not in harmony" with the Commerce's previously issued final results.  See 19 U.S.C. § 1516a(c)(1) (2000).  This is also true for a NAFTA panel decision "not in harmony" with the results of an ITC threat of injury determination.  See generally 19 U.S.C. § 1516a(g).

[4]      Parties to NAFTA may opt to replace judicial review of certain final determinations with review by a NAFTA arbitral panel.  See Feldspar Corp. v. United States, 16 CIT 1067, 1068, 809 F. Supp. 971, 973 (1992).

determination that the United States softwood lumber industry was threatened with material

injury by reason of imports from Canada. See Softwood Lumber from Canada, Inv. Nos. 701-

TA-414, 731-TA-928 (Final) USITC Pub. 3509 (May 2002). The United States Department of

Commerce ("Commerce") implemented the ITC's determination by issuing the antidumping

("AD") and countervailing duty ("CVD") orders incorporating it. Those orders were effective

upon publication in the Federal Register on May 22, 2002. See Certain Softwood Lumber

Products from Canada, 67 Fed. Reg. 36,068 (Dep't Commerce May 22, 2002) (notice of

amended final determination of sales at less than fair value and notice of antidumping order);

Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36,070 (Dep't Commerce May

22, 2002) (notice of amended final affirmative countervailing duty determination and notice of

countervailing duty order) (collectively "May 22, 2002 orders"). That publication served as

notice to the Bureau of Customs and Border Protection ("Customs") that it was henceforth to

collect cash deposits for the subject merchandise equal to the amended weighted average AD

margin[5] and net subsidy rate.[6] See Certain Softwood Lumber Products from Canada, 67 Fed.

Reg. at 36,068; Certain Softwood Lumber Products from Canada, 67 Fed. Reg. at 36,070. The

---

[5]     19 U.S.C. § 1677(35)(A) defines "dumping margin" as "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." Subsection (35)(B) defines "weighted average dumping margin" as the "percentage determined by dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such exporter or producer." 19 U.S.C. § 1677(35)(B).

[6]     A countervailable subsidy is present when a government or related authority provides a financial contribution to an entity and a benefit is thereby conferred. The statute defines "financial contribution" as: (i) the direct transfer of funds; (ii) foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income; (iii) providing goods or services, other than general infrastructure; or (iv) purchasing goods. See 19 U.S.C. § 1677(5)(D).

deposits largely remain in the United States treasury.[7]

The ITC's affirmative determination was appealed to a NAFTA panel pursuant to Article 1904 of the NAFTA. On September 10, 2004, at the direction of the panel, the ITC issued a negative threat of injury determination. See Softwood Lumber from Canada, Inv. Nos. 701-TA-414, 731-TA-928 (Final) (Third Remand), USITC Pub. 3815, Views on Remand (Sept. 10, 2004) at 13–14. On October 12, 2004, the NAFTA panel affirmed the ITC's negative threat of injury determination, and the NAFTA Secretariat issued a Notice of Final Panel Action. See Certain Softwood Lumber Products from Canada, USA-CDA-2002-1904-07, Panel Decision (Oct. 12, 2004) ("final panel decision"). Commerce thereafter published the Timken notice, reflecting that the final panel decision was "not in harmony" with the ITC's original injury determination of May 2002 and suspending liquidation of the entries of the subject merchandise. See Certain Softwood Lumber Products from Canada, 69 Fed. Reg. 69,584, 69,585 (Dep't Commerce Nov. 30, 2004). The effective date of the Timken notice was November 4, 2004.[8]

---

[7]     The United States has collected over $4 billion in estimated duties under the AD/CVD orders. As of October 1, 2005, Customs held $1,291,632,917.84 in AD cash deposits under case number A-122-838 and $2,898,194,521.75 in CVD cash deposits under case number C-122-839. See FY 2005 Annual Disbursement Report: Section III (Nov. 29, 2005), available at http://www.customs.gov/xp/cgov/import/add_cvd/cont_dump/cdsoa_05/fy_2005_annual_report/ (last visited Sept. 25, 2006).

[8]     Pursuant to § 1516a(g)(5)(B), notice of the final decision was to be published within ten days of the issuance of the NAFTA panel decision, or by November 4, 2004. In fact, publication was not made until November 30, 2004. See 69 Fed. Reg. at 65,585. The notice set forth that "the Department must publish notice of decision . . . which is 'not in harmony' with the Department's results. . . . Publication of this notice fulfills [this] obligation. . . . [T]his notice will serve to suspend liquidation of entries [made] on or after November 4, 2004, i.e., 10 days from the issuance of the Notice of Final Action." Id. Thus, the court and the parties treat November 4, 2004 as the effective date, as it was the last lawful day that notice of an adverse decision could be published.

Periodic reviews[9] of the May 22, 2002 AD/CVD orders have been requested.  The results of these reviews have been appealed to NAFTA panels or this Court.

## II.  Analysis

At issue is the disposition of the cash deposits made on or before the publication of the Timken notice.  Specifically, the court must determine if 19 U.S.C. § 1516a(g)(5)(B) controls liquidation of the pre-Timken notice entries.  Should that be the case, entries made on and before November 4, 2004 would be liquidated in accordance with the May 22, 2002 orders incorporating the May 16, 2002 ITC affirmative determination, rather than the subsequent negative determination upheld by the NAFTA panel.  In other words, the court must determine whether the unfair trade laws: (1) require that entries made on or before November 4, 2004, the liquidation of which has been suspended, are to be liquidated in accordance with the May 22, 2002 affirmative unfair trade orders, even though those orders have been invalidated; or (2) call for the liquidation of all unliquidated entries in accordance with the ITC's Negative Remand Determination.  See Certain Softwood Lumber Products from Canada, USA-CDA-2002-1904-07, Panel Decision (Oct. 12, 2004).

Review of AD/CVD determinations involving merchandise from free trade area countries,[10] such as softwood lumber imported into the United States from Canada under

---

[9]      See 19 U.S.C. § 1675.

[10]     Section 1516a(f)(10) defines "free trade area country" as:

> (A) Canada for such time as the NAFTA is in force with respect to, and the United States applies the NAFTA to, Canada.  (B) Mexico for such time as the NAFTA is in force . . . .  (C) Canada for such time as - (i) it is not a free trade area country under subparagraph (A); and (ii) the Agreement [United States-Canada Free-Trade Agreement] is in force with respect to, and the United States applies the Agreement to, Canada.

NAFTA, is governed by 19 U.S.C. § 1516a(g).  According to Defendants, where a NAFTA panel review of an ITC final determination is requested, § 1516a(g)(5)(B) controls the liquidation of merchandise subject to the panel's review:

> In the case of a determination for which binational panel review is requested pursuant to article 1904 of the NAFTA or of the Agreement,[11] entries of merchandise covered by such determination shall be liquidated in accordance with the determination of the administering authority [Commerce] or the Commission [ITC], if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the administering authority of notice [the Timken notice] of a final decision of a binational panel, or of an extraordinary challenge committee, not in harmony with that determination.

19 U.S.C. § 1516a(g)(5)(B).  Defendants maintain that despite the ITC's ultimate determination that there was no injury or threat of injury, Plaintiffs are not entitled to refunds of AD/CVD deposits made on merchandise entered on or before November 4, 2004.  See Def.'s Mem. 35; Def.-Int.'s Reply 46.  Defendants base this argument primarily on what they insist is the plain meaning of § 1516a(g)(5)(B): that the pre-Timken notice entries must be liquidated "in accordance with the [original] determination of the . . . Commission."  See Def.'s Reply 42 (characterizing the rule in § 1516a(g)(5)(B) as "the unambiguous text of the controlling statute"); see also Def.-Int.'s Reply 46.

        We agree with Defendants that, were § 1516(a)(g)(5)(B) to control, entries made on or before the date of publication of the Timken notice would be liquidated in accordance with the order incorporating the ITC's initial affirmative determination, even though the ITC reversed that determination in response to the NAFTA panel decision.  We further agree that any entries

---

11        The "Agreement" refers to the United States-Canada Free-Trade Agreement.  See 19 U.S.C. § 1516a(f).

made after the date of publication of the <u>Timken</u> notice would be liquidated in accordance with Commerce's order reflecting the final decision of the NAFTA panel. Accordingly, were the court to find that § 1516(a)(g)(5)(B) governs here, entries of softwood lumber made on or before November 4, 2004 would be liquidated in accordance with the May 22, 2002 orders, which incorporate the ITC's May 16, 2002 affirmative threat of injury determination. Those entries made after November 4, 2004, however, would be liquidated in accordance with the final NAFTA panel decision affirming the ITC's September 10, 2004 negative determination.

The issue, then, is whether § 1516a(g)(5)(B) is the controlling statute under the facts of this case. Plaintiffs claim that it is not. According to Plaintiffs, § 1516a(g)(5)(B) must be read together with § 1516a(g)(5)(C), and that such reading requires the refund of deposits for entries made before, on, and after November 4, 2004. Pl.-GOC's Mem. 39 ("The United States must refund all cash deposits on softwood lumber . . . pursuant to the AD/CVD orders."). They contend that all entries of the subject merchandise, the liquidation of which remains suspended by virtue of § 1516a(g)(5)(C), must be liquidated in accordance with the October 12, 2004 final NAFTA panel decision reversing the ITC affirmative determination. Plaintiffs insist that, having prevailed on the merits in the NAFTA review, they must receive the full benefit of their victory. They further assert that such result is consistent with the statutory scheme as a whole and the legislative history of the relevant provisions. The court agrees with Plaintiffs and finds that the provisions of § 1516a(g)(5)(B) do not apply to entries, the liquidation of which continues to be suspended under §1516a(g)(5)(C).

Subsection 1516a(g)(5)(C), entitled "Suspension of Liquidation," provides:

(i) In general

> Notwithstanding the provisions of subparagraph (B), in the case of a determination described in clause (iii) [§ 1675 administrative review] or (vi) [scope determination] of subsection (a)(2)(B) of this section for which binational panel review is requested pursuant to article 1904 of the NAFTA or of the Agreement, the administering authority [Commerce], upon request of an interested party who was a party to the proceeding in connection with which the matter arises and who is a participant in this binational panel review, shall order the continued suspension of liquidation of those entries of merchandise covered by the determination that are involved in the review pending the final disposition of the review.

19 U.S.C. § 1516a(g)(5)(C) (emphasis added).  Central to the court's conclusion is its finding that the "continued" suspension of liquidation provided for in § 1516a(g)(5)(C) acts as the equivalent of an injunction against liquidation and thus halts liquidation until the suspension expires.  In reaching its result, the court recognizes that liquidation of most pre-November 4, 2004 entries has been suspended through the following steps.[12]  Pursuant to 19 U.S.C. §§ 1671b(d)(2) and 1673b(d)(2), when Commerce issues an affirmative preliminary determination, it must order the suspension of liquidation of all entries made on or after the determination's date of publication.  When the final determination is also affirmative, the suspension remains in place.  See Int'l Trading Co. v. United States, 281 F.3d 1268, 1272 (Fed. Cir. 2002) (citing 19 U.S.C. § 1673b(d) (1988)); see also Fijutsu Gen. Am., Inc. v.

---

[12]      There were three adjustments to the ongoing suspension of liquidation.  In its final determination, the ITC found threat of injury rather than material injury.  Consequently, pursuant to 19 U.S.C. §§ 1671e(b)(2) and 1673e(b)(2), the suspension of liquidation was removed for entries from the date of publication of the preliminary Commerce determinations to the date of publication of the final ITC determination, and no duties should have been assessed on those entries.   Prior to the issuance of the final determination, the suspensions of liquidation in both the AD and the CVD investigations were discontinued pursuant to the last paragraphs of §§ 1671b(d)(2) and 1673b(d)(2) because the permitted period for a preliminary suspension of liquidation had expired.  Suspension resumed upon completion of the proceedings in May 2002.

United States, 283 F.3d 1364, 1380 (Fed. Cir. 2002).[13]  Notice of this suspension is given

pursuant to 19 C.F.R. § 159.58 (2006), which states that: "[u]pon receipt of notification from

the Commissioner, each port director shall suspend liquidation . . . on or after the date of

publication of . . . [a] Notice of Final Affirmative Antidumping Determination."  19 C.F.R.

§ 159.58(a) (internal quotations omitted).  This suspension stays in place until the period to

request a periodic review[14] has expired.  See generally id.; 19 U.S.C. § 1673b(d)(2).

Suspension is further extended upon a request for a periodic review pursuant to § 1675 for

entries subject to such review.  See generally 19 U.S.C. § 1675(a); OKI Elec. Indus. Co. v.

United States, 11 CIT 624, 627, 669 F. Supp. 480, 483 (1987).  Thereafter, if the results of a

periodic review are appealed to a NAFTA panel, at a party's request, the suspension of

---

[13]     Sections 1671b(d) and 1673b(d) authorize Commerce to order Customs to collect "provisional measures" upon a preliminary finding of material injury to the domestic industry. As discussed in Tembec I, duties collected pursuant to a provisional measure are to be refunded if the ITC's final determination finds either no injury, or, under certain circumstances, merely a threat of material injury to the domestic industry.  The suspension following a preliminary determination under §§ 1671b(d) and 1673b(d) is intended to ensure that entries are not liquidated until after the final determination has been made.

[14]     The purpose of a periodic review is to provide an opportunity to make adjustments to the duties provided for in AD/CVD orders, based on actual experience.  "Unlike systems of some other countries, the United States uses a 'retrospective' assessment system under which final liability for antidumping and countervailing duties is determined after merchandise is imported."  19 C.F.R. § 351.212.  "If Commerce finds that dumping or subsidization has occurred, and the ITC finds that dumping or subsidization causes, or threatens to cause, material injury to a domestic industry, interested parties, may, each year, upon the anniversary of the original findings, request a [periodic review] to adjust the dumping or countervailing duty in light of the importers' actual current conduct."  Ontario Forest Indus. Ass'n v. United States, 30 CIT __, __, 444 F. Supp. 2d 1309, 1311 (2006) (citing 19 U.S.C. § 1675.).  Indeed, in a "'[periodic] review, Commerce recalculates the relevant variables to determine whether a foreign country is continuing the practice of dumping, i.e., selling its merchandise in the United States for less than a foreign like product in its home market.'"  Decca Hospitality Furnishings, LLC v. United States, 30 CIT __, __, 427 F. Supp. 2d 1249, 1251 (2006) (quoting NTN Bearing Corp. v. United States, 295 F.3d 1263, 1266 (Fed. Cir. 2002)).

liquidation continues pending the outcome of the appeal.  See 19 U.S.C. § 1516a(g)(5)(C).

As to the subject merchandise, the parties agree that liquidation continues to be suspended for a large majority of the entries.[15]  See Private-Party Pl.'s Resp. Remedy Questions 6 ("Periodic reviews have been requested, and liquidation has been suspended or enjoined, for entries from May 22, 2002 through November 4, 2004."); Def.'s Resp. Ct.'s July 21, 2006 Order 6 ("Once periodic administrative reviews were requested, the liquidation of pre-November 4, 2004 entries could be suspended only as a consequence of the conduct of those reviews and subsequent suspensions . . . ."); Def.-Int.'s Resp. Ct.'s July 21, 2006 Order 4 ("To the extent that . . . periodic reviews have been requested in this case . . . liquidation of those entries remain suspended pending the outcome of the binational panel review."); Resp. Pl. Gov't of Canada, Pl.-Int. Canadian Provincial Gov'ts Ct.'s Remedy Questions 4 ("[R]espondents have requested administrative reviews and liquidation of entries covered by those reviews remains suspended . . . .").

Defendants do not quarrel with the timing or duration of the suspension of liquidation. They agree that a suspension of liquidation has been in place for most of the entries from the publication of the ITC final determination forward.  See Def.'s Reply 43; Def.'s Resp. Ct.'s July 21, 2006 Order 8.  Rather, they argue that the continued suspension of liquidation provided for in § 1516a(g)(5)(C), which results from the appeal of a final determination in a periodic review, does not allow for what they describe as "retroactive" relief.  Thus, Defendants contend that this suspension of liquidation does not have the same effect as an

---

[15]     Those few pre-November 4, 2004 entries for which periodic reviews were not requested have been liquidated through active or deemed liquidation. See generally 19 U.S.C. § 1504.

injunction entered by this Court.  See Def.-Int.'s Resp. Ct.'s July 21, 2006 Order 2 ("[T]he liquidation rule of § 1516a(g)(5)(B) must continue to apply even if liquidation is suspended . . . ."); see also Def.'s Reply 43 ("Canada's interpretation ignores the express language of the statute by superimposing upon the statute the concept that the effective date established in 19 U.S.C. § 1516a(g)(5)(B) applies only to the extent that any entries have not been suspended in a subsequent review.  Indeed, acceptance of that interpretation would grant parties what the statute specifically precludes — a retroactive effective date for a panel decision concerning an investigation determination as a consequence of a subsequent administrative suspension.").[16]

Despite Defendants' contentions, a review of the legislative history for subsections 1516a(g)(5)(B) and (C) confirms that they were enacted to achieve the goals of prompt liquidation of uncontested entries and the ultimate liquidation of contested entries in accordance with final litigation results.  Viewed in the context of the law as it existed when the subsections were drafted, it becomes apparent that § 1516a(g)(5)(B) operates more narrowly than Defendants argue, and that the operation of § 1516a(g)(5)(C) is necessarily broader.

---

[16]     It should be noted that in at least one past investigation, Commerce ordered a full refund of cash deposits in response to an adverse NAFTA panel decision.  See, e.g., Fresh Chilled and Frozen Pork from Canada, 56 Fed. Reg. 29,464 (Dep't Commerce June 27, 1991) (revocation of countervailing duty order and termination of administrative review).  In Fresh Chilled and Frozen Pork from Canada, Commerce ordered the refund of all estimated duties on unliquidated entries following an adverse final NAFTA panel decision, notwithstanding § 1516a(g)(5)(B).  There, the ITC originally rendered an affirmative threat of injury determination, and issued a countervailing duty order.  Canadian respondents subsequently appealed the determination to a NAFTA panel.  The panel reviewing the threat of injury determination remanded to the ITC, and pursuant to that remand, the ITC rendered a negative threat of injury determination.  An Extraordinary Challenge Committee later affirmed the panel's negative determination.  Thereafter, Commerce revoked the countervailing duty order and instructed Customs "to proceed with liquidation of all unliquidated merchandise without regard to countervailing duties and to refund all cash deposits and release all securities posted to cover estimated countervailing duties."  Id.

The drafters of § 1516a(g)(5)(B)[17] and of the simultaneously enacted § 1516a(g)(5)(C) intended that a suspension of liquidation, continued by the appeal of a periodic review[18] to a NAFTA panel, was to act as would an injunction against liquidation issued by this Court under the same circumstances.

Subsections 1516a(g)(5)(B) and (C), first appeared in the United States-Canada Free-Trade Agreement Implementation Act of 1988 ("CAFTA").  See  Pub. L. No. 100-449, 102 Stat. 1851 (1988).  CAFTA's Statement of Administrative Action ("US-CFTA SAA") explains that 19 U.S.C. § 1516a(g) was enacted to reflect the law relating to appeals to this Court as it existed at that time:

> Article 1904(15)(d) of the Agreement requires that the United States and Canada amend their respective laws in order to ensure that existing procedures concerning the refund, with interest, of duties operate to give effect to a final binational panel decision.

US-CFTA SAA at 265–66.  Congress thus intended that decisions by the newly created binational panels would result in the same relief with respect to refunds, as would decisions of this Court.

More particularly, the US-CFTA SAA explains that:

> In order to enable a successful plaintiff to reap the fruits of its victory . . . the statute authorizes the CIT [United States Court of

---

[17]     While the court need not identify every instance in which subsection 1516a(g)(5)(B), rather than (C), may control, one example is useful.  Where: (1) the original order is negative (e.g., reflects a final determination of no injury to the domestic industry); (2) that order is found to be "not in harmony" with a NAFTA panel decision following an appeal; and (3) no periodic review is requested; § 1516a(g)(5)(B) would appear to control and the subject merchandise entered before publication of the Timken notice would thus be liquidated without AD/CV duties.

[18]     Prior to 1984, periodic  reviews were automatic.  Under current law, however, they must be requested.  See Sonco Steel Tube Div., Ferrum, Inc. v. United States, 12 CIT 990, 992, 698 F. Supp. 927, 928 (1988) ("Congress amended the law in 1984 to make annual reviews optional.").

International Trade] to enjoin the liquidation of entries of merchandise covered by certain types of challenged AD/CVD determinations upon request for such relief and a proper showing that the relief should be granted under the circumstances. 19 U.S.C. 1516a(c)(2).[19] Under existing caselaw, injunctive relief is granted automatically upon request in cases involving challenges to AD/CVD determinations made during the assessment stage of an AD/CVD proceeding. Zenith

---

[19] 19 U.S.C. § 1516a(c)(2) provides:

(2) Injunctive relief

In the case of a determination described in paragraph (2) of subsection (a) of this section ["Review of determination"] by the Secretary, the administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

19 U.S.C. § 1516a(e) then makes court decisions applicable to enjoined entries as follows:

(e) Liquidation in accordance with final decision

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit–

(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and

(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

> Radio Corp. v. United States, 710 F.2d 806 (Fed. Cir. 1983).
> However, injunctive relief is rarely, if ever, granted in cases
> involving challenges to AD/CVD determinations made during
> the initial investigation stage of an AD/CVD proceeding. See,
> e.g., American Spring Wire Corp. v. United States, 578 F. Supp.
> 1405 (Ct. Int'l Trade 1984).

Id. at 265. The legislative history, therefore, indicates that Congress intended subsections 1516a(g)(5)(B) and (C) to provide for the same liquidation results when appeals were taken to a NAFTA panel, as when appeals of final determinations were taken to this Court. Because a NAFTA panel would have no equity powers,[20] however, the device used to achieve this result was an injunction-like suspension of liquidation. Hence, because injunctions were "rarely, if ever, granted"[21] when appeals were taken to this Court following final determinations at the initial investigation stage, i.e., the process leading to an AD/CVD order, § 1516a(g)(5)(B) makes no provision for a suspension of liquidation when such final determinations are appealed to NAFTA panels. On the other hand, because injunctions were viewed by Congress as automatic when requested following the appeal of a periodic review to this Court, § 1516a(g)(5)(C) makes the "continued" suspension of liquidation automatic when these results are appealed to a NAFTA panel.

---

[20]     Congress specifically chose not to provide such authority, as demonstrated by its instruction that "panels will not have equity powers" and that "the injunctive remedy provided by section [1516a(c)(2)] will not be available to prevent liquidation." US-CFTA SAA at 266.

[21]     Such injunctions were rare because of the legal standard requiring proof of "irreparable harm." Because foreign exporters' and importers' interests in upsetting unfair trade orders were protected by the administrative suspension of liquidation, they did not need injunctive relief at the investigative stage. The domestic industry, which would be opposed to the nonexistence of such orders, could obtain relief going forward and, bearing no duty obligation, likewise could not show irreparable harm in connection with the investigative stage. See Am. Spring Wire Corp., 7 CIT at 6, 578 F. Supp. at 1408.

Thus, the purpose of the subsections was to codify Congress's understanding of the law. Subsequent judicial developments with respect to matters appealed to this Court cannot, of course, change the meaning of the subsections' words with respect to matters appealed to NAFTA panels. An examination of contemporaneous judicial decisions, though, can serve to clarify how they apply to the facts of this case. When the subsections were drafted, there was no disagreement[22] that if a periodic review were requested and an injunction granted, all unliquidated merchandise would be liquidated in accordance with the ultimate determination of: (1) the appeal of the periodic review; or (2) the appeal of the underlying AD duty order. See Sonco Steel Tube Div., Ferrum, Inc. v. United States, 12 CIT 990, 993, 698 F. Supp. 927, 930 (1988) ("Apparently, there is agreement that where requested annual reviews have not

---

[22]      In response to the court's questions, Defendants have acknowledged that "section 1516a(g)(5)(C) reflects the Government's prior view that a request for an administrative review was necessary to obtain suspension of liquidation, pursuant to 19 U.S.C. § 1516a(c)(2) [providing for injunction of liquidation upon request of an interested party in the context of an appeal to this Court] even if a plaintiff sought review of an issue solely involving the original investigation." Def.'s Resp. Ct.'s July 21, 2006 Order 3. The other parties agree with this conclusion. See Def.-Int. Resp. Ct.'s July 21, 2006 Order 3 ("That the Congress . . . provided for a statutory equivalent to court-ordered injunction against liquidation only in the case of binational panel reviews of periodic reviews . . . does appear to reflect the U.S. Government's view of the circumstances under which injunctions against liquidation were properly granted . . . ."); Private-Party Pl.'s Resp. 3 (stating that a party "could ensure its right to a full refund by obtaining a continued suspension of liquidation through the periodic review process . . . by requesting a review"); Resp. Pl. Gov't of Canada, Pl.-Int. Canadian Provincial Gov'ts Ct.'s Remedy Questions 3 ("19 U.S.C. § 1516a(g)(5)(c) reflects . . . that it was necessary for a plaintiff seeking review of an investigation determination to request an administrative review to obtain continued suspension of liquidation."). While the Government's view was the subject of several divergent opinions in this Court between 1984 and 1998, this position was eventually rejected by the Court of Appeals for the Federal Circuit in Asociacion Colombiana de Exportadores de Flores v. United States, which found that an injunction could be sought to halt liquidation where only the findings resulting in the antidumping duty order were challenged. 916 F.2d 1571, 1575 (Fed. Cir. 1990) ("The government, however, seeks to liquidate the entries for the initial review period at the original, and now erroneous, level of 4.4 percent, solely because [appellant] failed to request an annual review, in which it could not have litigated the validity of that original dumping margin, to permit the government to do so would be unfair to [appellant]. Nothing in the statute suggests that Congress intended to produce such an inequitable result.").

been completed before a court decision finding an affirmative antidumping determination invalid there is no basis for liquidation with antidumping duties.  Therefore, a court order totally invalidating an [agency's] original determination, which order occurs in the midst of an annual review, will result in the suspended entries being liquidated with no antidumping duties, even though they were entered prior to the court's decision."); see also Asociacion Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1575 (Fed. Cir. 1990). Once the first periodic review of an AD/CVD order was completed, an appeal of the review determination to this Court would result in the entry of an injunction against liquidation.  This injunction would protect unliquidated entries from premature liquidation and ensure the victor the fruits of its victory resulting from its appeals.  Under the facts of this case, there can be little doubt that Congress intended that the suspension of liquidation found in § 1516a(g)(5)(C), which substituted for a court-ordered injunction, would serve to prevent premature liquidation of pre-Timken notice entries.  While Defendants may characterize this as retroactive relief, it is the result that would have obtained upon the entry of a court-ordered injunction at the time §§ 1516a(g)(5)(B) and (C) were enacted.  It necessarily follows that Congress, having intended parallel remedies, intended that the suspension of liquidation provided for in § 1516a(g)(5)(C) would provide the same result following a NAFTA panel decision, as would an injunction issued by this Court.

The absence of any language in § 1516a(g)(5)(C) explicitly allowing for an order of liquidation during, or following the appeal process, further demonstrates that Congress expected  liquidation of all entries subject to a suspension of liquidation to occur in accordance with a NAFTA panel's final determination.  In those situations where no periodic review is requested following the entry of an unfair trade order, the suspension of liquidation ceases, and

the liquidation instructions of § 1516a(g)(5)(B) govern.  When a periodic review has been requested, however, § 1516a(g)(5)(C) provides no corresponding authority for Commerce to order liquidation.  The absence of a liquidation provision in § 1516a(g)(5)(C) was not meant to prevent liquidation altogether.  All parties agree that the authority to order liquidation is necessarily implied at the conclusion of an appeal of a periodic review, and that all suspended entries are to be liquidated in accordance with the final results of that litigation.  See Def.'s Resp. Ct.'s July 21, 2006 Order 3 ("We agree that, even though 19 U.S.C. § 1516a(g)(5)(C) lacks a provision expressly governing the liquidation of entries following issuance of a NAFTA panel report concerning a periodic administrative review, liquidation of those entries is governed by the panel report, provided that the entries are subject to an administrative suspension pursuant to 19 U.S.C. § 1516a(g)(5)(C).") (emphasis in original).

Yet, having conceded the existence of a suspension following a request for a periodic review, and having agreed that a final determination of a NAFTA panel in a periodic review necessarily provides authority for Commerce to order liquidation of reviewed entries, Defendants nonetheless argue that the decision of the NAFTA panel would not apply to all of the suspended entries.  See Def.'s Reply 43.  Thus, Defendants claim that the suspension of liquidation found in § 1516a(g)(5)(C) is effective for some purposes, but not for others.  That is, Defendant maintains that despite the absence of express liquidation language, § 1516a(g)(5)(C) contemplates liquidation in accordance with the decision as to matters raised by a periodic review, but not as to issues that impact the underlying AD/CVD order.  The court rejects this argument as inconsistent with the statute, which does not make such a differentiation.  The argument is also inconsistent with the intent of Congress that there be the same results with respect to refunds whether an appeal is taken to a NAFTA panel or this

Court.  As the Government of Canada points out, "[t]he absence of an express liquidation provision in 19 U.S.C. § 1516a(g)(5)(C) demonstrates that, in implementing Chapter 19 of NAFTA into U.S. law, Congress relied upon the principle that a final appellate decision applies to all entries of subject merchandise for which liquidation has been suspended."  Resp. Pl. Gov't of Canada, Pl.-Int. Canadian Provincial Gov'ts Ct.'s Remedy Questions 1.

The foregoing analysis confirms that Congress established a system to account for NAFTA determinations that is both fair and in accord with the goal of enabling "a successful plaintiff to reap the fruits of its victory."  US-CFTA SAA at 265.  If an unfair trade order falls because the underpinning provided by the ITC injury determination fails, there is no basis for assessing duties to offset unfair trading practices.  See Asociacion Colombiana de Exportadores de Flores, 916 F.2d at 1577 n.21 ("The flaw in the government's argument is that without a valid antidumping determination in the original order, there can be no valid determination in a later annual review.").  Entries, the liquidation of which has been suspended, cannot, then, be liquidated with AD/CV duties under these conditions.  The legislative history makes it clear that Congress did not set up a system to retain duties that are not owed.  Rather, Congress provided for a suspension of liquidation to keep entries available for liquidation in accordance with law.

### III.  Conclusion

In applying the foregoing analysis to the facts of this case, the court holds that liquidation of a majority of the subject entries is suspended.  As a result, none of these suspended entries can be liquidated except in accordance with the results of the final litigation decision.  Section 1516a(g)(5)(C) controls, and § 1516a(g)(5)(B) is, therefore, inapplicable. Accordingly, all of Plaintiffs' unliquidated entries, including those entered before, on, and after November 4, 2004, must be liquidated in accordance with the final negative decision of the NAFTA panel.  Judgment shall be entered accordingly.

/s/Jane A. Restani
Jane A. Restani, Chief Judge


/s/Judith M. Barzilay
Judith M. Barzilay, Judge


/s/Richard K. Eaton
Richard K. Eaton, Judge


Dated this 13th day October, 2006
New York, NY